UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JACOBSON WAREHOUSE COMPANY, INC., d/b/a XPO LOGISTICS SUPPLY CHAIN, | ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) | No. 4:17-CV-00764 JAR |
| SCHNUCK MARKETS, INC., | ) ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff/Counterclaim Defendant Jacobson Warehouse Co., Inc., d/b/a/ XPO Logistics Supply Chain ("XPO")'s Motion for Partial Judgment on the Pleadings as to Counts IV and V of Second Amended Counterclaim. (Doc. No. 73) The motion is fully briefed and ready for disposition.[1]

**I.   Background**

The background of this case is set out in detail in the Court's November 29, 2017 Order and incorporated by reference herein. (See Doc. No. 64) Briefly, XPO and Schnuck entered into an Operating Agreement setting forth the terms and conditions under which XPO would provide certain warehouse management services for a new distribution facility Schnuck was designing. Each side contends the other breached their contractual and other obligations under the Agreement. On February 17, 2017, XPO filed its Complaint against Schnuck for breach of

---

[1] In its Memorandum in Opposition to XPO's motion, Defendant/Counterclaim Plaintiff Schnuck Markets, Inc. ("Schnuck") requests the Court reconsider its Order of November 29, 2017 granting XPO's motion for judgment on the pleadings on Schnuck's contract claims. (Doc. No. 77 at 12-15) As discussed herein, that request will be denied.

1

contract (Count I); declaratory judgment (Count II); action on account (Count III); quantum meruit (Count IV); and unjust enrichment (Count V). (Complaint ("Compl."), Doc. No. 1) Schnuck counterclaimed for breach of contract (Count I); breach of the covenant of good faith and fair dealing (Count II); negligence (Count III); fraud (Count IV); conversion (Count V); and breach of contract – transition services agreement (Count VI). (First Amended Counterclaim ("FAC"), Doc. No. 59)

The Court dismissed XPO's claims for quantum meruit and unjust enrichment, limited Schnuck's damages under Counts I, II and III of its counterclaim to direct damages as set forth in a limitation of liability provision in Section 5(b) of the Agreement, and dismissed Count IV of its counterclaim without prejudice for failure to sufficiently plead the elements of a claim for fraudulent misrepresentation. (Doc. No. 64) On December 18, 2017, Schnuck repleaded its fraud claim in Count IV of its Second Amended Counterclaim. (Second Amended Counterclaim ("SAC"), Doc. No. 69)

## II. Parties' arguments

XPO moves for partial judgment on the pleadings as to Schnuck's newly pleaded claim for fraud in the inducement (Count IV) and Schnuck's claim for conversion (Count V). XPO first argues that because this Court has already ruled that the limitation of liability in Section 5(b) of the Agreement applies to all claims seeking more than direct damages (see Doc. No. 64 at 11), Section 5(b) prohibits Schnuck from recovering any incidental or consequential damages or indirect, special or punitive damages on its fraud and conversion claims. (Doc. No. 74 at 6-11) Next, XPO argues that because Schnuck has chosen to seek damages rather than rescission, its fraud in the inducement claim is subject to the contractual limitation of liability in Section 5(b).

(Id. at 9-11) Lastly, XPO argues that Schnuck cannot base its claim for conversion on XPO's alleged negligent acts because conversion is an intentional tort. (Id. at 4-6)

Schnuck opposes XPO's motion, and urges the Court to reconsider its ruling granting XPO's motion for judgment on the pleadings on Schnuck's contract claims. (Doc. No. 77 at 13-15) Relying on Alack v. Vic Tanny Int'l of Missouri, Inc., 923 S.W.2d 330, 337 (Mo. 1996); Coomer v. Kansas City Royals Baseball Corp., 437 S.W.3d 184 (Mo. 2014); and Stark v. Sandberg, Phoenix & von Gontard, P.C., 381 F.3d 793 (8th Cir. 2004), Schnuck further argues that the limitation of liability in Section 5(b) of the Agreement is invalid to the extent it purports to limit Schnuck's damages resulting from XPO's intentional torts. (Doc. No. 77 at 3-8)

Next, Schnuck argues it did not "affirm" the validity of Section 5(b) by seeking damages rather than rescission in its claim for fraudulent inducement, citing Alack and Stark. Schnuck argues that XPO's affirmation argument is also negated by well-established Missouri case law holding that a party may not, by disclaimer or otherwise, contractually exclude liability for fraud in inducing that contract. See, e.g., Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 767 (Mo. 2007). (Id. at 8-9) Lastly, Schnuck contends it has pled a valid claim for conversion by alleging XPO's wrongful use of Schnuck's property while in possession. (Id. at 10-11)

XPO replies that Schnuck's request for reconsideration is procedurally improper and unwarranted; Schnuck is simply reiterating the same arguments this Court considered and overruled. (Doc. No. 81 at 3-6) In further reply, XPO argues it is well settled that a fraud in the inducement plaintiff that seeks money damages under a contract is bound by any limitation of liability in the contract, citing Riley v. Lucas Lofts Invs., LLC, 412 S.W.3d 285, 290 (Mo. Ct. App. 2013). (Id. at 7) As for Schnuck's argument that the Agreement's integration clauses do not foreclose liability for fraud in the inducement, XPO replies that the effect of the Agreement's

3

integration clauses is irrelevant to the applicability of the limitation of liability to the claim on which Schnuck seeks to recover. (Id. at 8) Finally, XPO argues that Schnuck's conversion claim cannot be premised on negligent theories of misconduct; conversion is an intentional tort that requires an allegation that the defendant intended to, and did, take possession of the property at issue. (Id. at 8-9)

**III.  Discussion**

**A. Schnuck's request for reconsideration**

With regard to Schnuck's request that the Court reconsider its ruling granting XPO's motion for judgment on the pleadings on Schnuck's contract claims, the Court finds Schnuck is largely reiterating the same arguments it made in opposition to XPO's previous motion, which the Court considered and rejected. There is no question that Missouri law does not allow parties to contractually *exonerate* themselves for willful acts or gross negligence. See Alack, 923 S.W.2d at 337 (citing Liberty Financial, 670 S.W.2d at 48). However, Missouri law does allow sophisticated business entities to enter contracts with each other which *limit liability* for gross negligence or a willful injury arising out of the performance of the contract. Id. Contrary to Schnuck's assertion (Doc. No. 77 at 2), "[e]xoneration versus a limitation of liability is a distinction with a difference." In re NHB, LLC, 287 B. R. 475, 480 (Bankr. E.D. Mo. 2002). For these reasons, and the reasons set out in the Court's November 29, 2017 Order and incorporated by reference herein, Schnuck's request for reconsideration will be denied.

**B. XPO's motion for partial judgment on the pleadings as to Counts IV and V**

In support of its motion, XPO first argues that Schnuck is limited to direct damages on its fraudulent inducement and conversion claims pursuant to the limitation of liability in Section 5(b) of the Agreement, which provides in part that that "unless otherwise prohibited by law,

4

neither party shall be liable for incidental or consequential damages or indirect, special or punitive damages."[2] In its prior ruling, the Court found it clear from the plain language of Section 5(b) that XPO and Schnuck intended the limitation of liability to apply to negligence claims and any other claims seeking more than direct damages. (Doc. No. 64 at 9-10) As discussed above, sophisticated parties may contractually limit their future liability for intentional torts, where, as here, the limitation is not a complete exoneration. In re NHB, 287 B. R. at 480. Accordingly, the Court concludes that the Section 5(b) limitation on damages applies to Schnuck's fraud in the inducement and conversion claims.

XPO further argues that by suing for damages on its fraud in the inducement claim, Schnuck has elected to affirm the Agreement and must therefore be bound by Section 5(b). "Under Missouri law, a party who is fraudulently induced to enter a contract may either affirm the contract and sue for damages or may disaffirm the contract and sue in equity for its rescission."[3] Riley, 412 S.W.3d at 290 (quoting Fiordelisi v. Mt. Pleasant, LLC, 254 S.W.3d 120, 128 (Mo. Ct. App. 2008)); see also Cabinet Distributors, Inc. v. Redmond, 965 S.W.2d 309, 314 (Mo. Ct. App. 1998). Schnuck responds that under Alack and Stark, it could not "affirm" the damages limitation of Section 5(b), presumably because such damages limitations are against Missouri public policy, and because Missouri courts refuse to allow intentional tortfeasors to hide behind contractual disclaimers of pre-contractual representations to defeat claims for fraudulent inducement.

---

[2] Section 5(b) is set out in its entirety in the Court's November 29, 2017 Order. (Doc. No. 64 at 9-10 n. 3)

[3] Here, rescission was never a viable remedy because the Agreement had been terminated. Generally, once a contract has been terminated, the party terminating the contract cannot later seek rescission of the contract. American Litho, Inc. v. Imation Corp., No. 08-CV-5892 (JMR/SRN), 2010 WL 681275, at *4 (D. Minn. Feb. 23, 2010) ("One cannot rescind a contract no longer in existence.") (citations omitted).

These arguments are not dispositive because, as discussed above, Missouri law permits sophisticated business entities to contractually limit their liability for intentional torts, so long as there is not complete exoneration. Furthermore, XPO is not seeking judgment on the pleadings based on the Agreement's integration clauses and the Court need not address them. Based on the authorities cited herein, the Court concludes that Schnuck affirmed the Agreement by electing to seek damages for fraud and that its recovery will be limited by Section 5(b). See Evolution, Inc. v. Suntrust Bank, 342 F. Supp.2d 964, 973 (D. Kan. 2004).

Lastly, XPO argues that its alleged negligence cannot be the basis of a claim for conversion, an intentional tort. The Court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard that governs Rule 12(b)(6) motions, Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990), accepting all facts alleged in the complaint as true and drawing all reasonable inferences from the facts in favor of the plaintiff, Ashley County v. Pfizer, 552 F.3d 659, 665 (8th Cir. 2009) (quoting Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006)).

Here, Schnuck's claim for conversion alleges that "XPO made wrongful use of [Schnuck's] property by mishandling, misplacing, and damaging temperature- and date-sensitive items at the Facility." (SAC at ¶ 104) Schnuck further alleges that XPO has failed and refused to reimburse it for inventory losses due to damage caused by XPO's negligence *or willful misconduct*, including XPO's negligent handling of Schnuck's inventory. (Emphasis added.) (SAC at ¶ 63) The Court finds these allegations sufficient to state a claim for conversion at this stage of the proceedings.

**IV.  Conclusion**

For these reasons, the Court will grant XPO's motion for partial judgment on the pleadings and limit Schnuck's damages under Counts IV and V to direct damages as set forth in Section 5(b) of the Agreement. Schnuck's request for reconsideration will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff/Counterclaim Defendant Jacobson Warehouse Co., Inc., d/b/a/ XPO Logistics Supply Chain ("XPO")'s Motion for Partial Judgment on the Pleadings as to Counts IV and V of Second Amended Counterclaim [73] is **GRANTED** in accordance with the rulings herein.

**IT IS FURTHER ORDERED** that Defendant/Counterclaim Plaintiff Schnuck Markets, Inc.'s request for reconsideration is **DENIED**.

Dated this 16th day of July, 2018.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**