# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JACOBSON WAREHOUSE COMPANY, INC., d/b/a XPO LOGISTICS SUPPLY CHAIN, | ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | |
| v. | ) ) | No. 4:17-CV-00764 JAR |
| SCHNUCK MARKETS, INC., | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the following motions: Schnuck's Motion to Exclude XPO's Damages Expert Angela Morelock (Doc. No. 157); Schnuck's Motion to Exclude XPO's Expert on Prevailing Industry Standards Jerry Davis (Doc. No. 159); XPO's Motion to Strike SMI's Supplemental Rebuttal Expert Disclosure and Related Untimely Production and to Strike and Exclude SMI's Proffered Rebuttal Expert's Testimony (Doc. No. 169); XPO's Alternative Motion to Compel Continuation of Deposition of SMI Rebuttal Expert Tom O'Brien (Doc. No. 167); and XPO's Motion to Limit or Exclude Testimony of SMI's Expert Michael Powell (Doc. No. 171). The motions are fully briefed and ready for disposition.

**Legal standard**

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590-93 (1993); Russell v. Whirlpool Corp., 702 F.3d 450, 456 (8th Cir. 2012). To satisfy the reliability

1

requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." Barrett v. Rhodia, Inc., 606 F.3d 975, 980 (8th Cir. 2010) (quoting Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006)). To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. Id.

The Court in Daubert emphasized that the inquiry required by FRE 702 is intended to be flexible. 509 U.S. at 594. The Daubert analysis was extended to all expert testimony, as opposed to only "scientific" testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 135, 147 (1999). Due to the liberalization of expert testimony admission standards signaled by Daubert and its progeny, and the codification of this trend by FRE 702, the Eighth Circuit has held that expert testimony should be liberally admitted. Johnson v. Mead Johnson & Co., LLC, 754 F.3d 557, 562 (8th Cir. 2014) (citing United States v. Finch, 630 F.3d 1057, 1062 (8th Cir. 2011) (doubts about usefulness of expert testimony are resolved in favor of admissibility)); Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (expert testimony should be admitted if it advances the trier of fact's understanding "to any degree"); Lauzon v. Senco Prod., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (FRE 702 "clearly is one of admissibility rather than exclusion") (quotations omitted). As long as the expert testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded at the outset. Id. (citing Daubert, 509 U.S. at 596). Exclusion of an expert opinion is proper "only if it is so fundamentally unsupported that it can offer no assistance to the jury." Wood v. Minnesota Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997) (citation and quotation marks omitted).

**Angela Morelock, CPA, CFE, CFF, ABV**

Angela Morelock is a CPA and forensic accountant retained by XPO to evaluate the damage estimates prepared by Schnuck employees, and in particular Alex Dye, Schnuck's designated fact witness on the topic of damages.[1] Ms. Morelock offers nine opinions in her July 14, 2018 expert report. In opinions 1-8, she opines on the following categories of damages claimed by Schnuck: product lost; gross margin on product lost; out-of-pocket costs - Bridgeton; out-of-pocket costs - customer promotions; out-of-pocket costs - store labor; damages from lost sales; expo and other expenses; and claw backs. In opinion 9, Ms. Morelock concludes that Mr. Dye's calculations have not "reliably, or with any degree of reasonable certainty, calculated the damages that [Schnuck] may have suffered as a result of XPO's alleged actions."

Schnuck argues that Ms. Morelock's opinions are unreliable and thus inadmissible for three reasons. First, she bases her opinions on the premise that Mr. Dye must testify consistently with professional standards governing expert testimony given by CPAs, when the law does not require a party to prove damages through an expert or, by implication, require a lay witness to comply with standards governing professions in which they are not members. Second, Ms. Morelock impermissibly opines on the interpretation and application of the parties' Agreement and Mr. Dye's purported failure to establish Schnuck's damages with "reasonable certainty," both legal questions for the Court. Lastly, Schnuck argues that Ms. Morelock violates the standards of her profession by failing to maintain objectivity and assuming the role of an advocate.

---

[1] Alex Dye was a financial analyst for Schnuck's logistics team tasked with tracking losses due to the transition to XPO's operation of NorthPark. Mr. Dye is not an accountant and Schnuck did not designate him as an expert.

XPO responds that Mr. Dye's damages calculations are a proper subject for rebuttal expert testimony on questions relating to whether the damages were calculated with reasonable certainty or otherwise in accordance with proper methodologies. XPO further responds that while federal courts do allow lay witnesses to testify about damages, including lost profits, without being designated as experts, in those cases, the witnesses were officers and business owners. See e.g., Allied Sys., Ltd. v. Teamsters Local 604, 304 F.3d 785, 792 (8th Cir. 2002); Seubert v. FFE Transp. Servs., Inc., No. 4:11CV01651 AGF, 2013 WL 328674, at *4 (E.D. Mo. Jan. 29, 2013). Mr. Dye was neither. XPO also contends that Ms. Morelock does not opine on whether either party breached the Agreement or which of two plausible interpretations of the Agreement apply. Rather, her references to the Agreement in her opinions merely point to provisions that Mr. Dye either ignored or failed to address in his calculations. Lastly, XPO argues there is no specific evidence to support Schnuck's argument that Ms. Morelock violated the standards of her profession.

With regard to Mr. Dye's testimony generally, "[p]ersonal knowledge or perception acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for lay opinion testimony." Lift Truck Lease & Serv., Inc. v. Nissan Forklift Corp., N. Am., No. 4:12-CV-153 CAS, 2013 WL 3092115, at *5 (E.D. Mo. June 18, 2013) (quoting Burlington N. Railroad Co. v. State of Neb., 802 F.2d 994, 1004-05 (8th Cir. 1986)); Fed. R. Evid. 701. See also Gateway Foam Insulators, Inc. v. Jokerst Paving & Contracting, Inc., 279 S.W.3d 179, 183, 187 (Mo. 2009) (en banc) (company's accountant could testify as to company's lost profits based on review of plaintiff's business records and its construction market). It is for the jury to weigh the differing testimony offered by Mr. Dye and Ms. Morelock.

In addition, the Court has ruled in a separate order that with the exception of replacement cost of inventory loss and potential claw back damages, Schnuck's claimed damages are indirect or consequential damages and barred under the limitation of liability provisions of the parties' Agreement. Thus, any fact or expert testimony about lost profits, out of pocket expenses and lost sales is not relevant to any issue at trial. Accordingly, Schnuck's motion to exclude Ms. Morelock's testimony and opinions on these categories of damages will be denied as moot in light of the Court's rulings.

With regard to the category of damages identified as "product lost," Ms. Morelock opines that Mr. Dye's calculations are not based on sufficiently reliable data and not determined using an acceptable methodology. She notes that Mr. Dye did not consider the 1% Loss/Damage Allowance referenced in the parties' Agreement, such that his calculations fail to consider relevant facts and overstate Schnuck's asserted damages. She also notes Mr. Dye did not consider product loss that might be attributable to Schnuck under Section 6(b) of the Agreement, thereby rendering his analysis of lost product incomplete and unreliable. Referencing the Inventory Claim Procedure in Section 6(h) of the Agreement, Ms. Morelock opines that Mr. Dye ignored this contract process and instead used his own method of assessing inventory loss to XPO based on Schnuck's experience at the Bridgeton warehouse. As for claw back damages, Ms. Morelock opines that Mr. Dye's calculations "gross up" warehouse expenses by including XPO's 7% management fee imposed under Section 4(a) of the Agreement before computing the claw back amount, thereby overstating the claw back amounts. She further notes, based on Mr. Dye's deposition, confusion as to whether an operating budget for warehouse expenses and cost per case was ever finalized and approved by Schnuck.[2]

---

[2] In ruling on the parties' respective dispositive motions, the Court concluded that factual disputes exist concerning the application of Loss/Damage Allowance and the True-Up provisions in the Agreement.

One of the functions of rebuttal testimony is to counteract evidence of the adverse party. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006) (citation omitted). As such, rebuttal evidence may be used to challenge the evidence or theory of an opponent. Id. Ms. Morelock is qualified to rebut Mr. Dye's damages calculations on questions relating to whether the damages were calculated in such a way as to enable a jury "to make an intelligent estimate of damages as circumstance of the case will admit," i.e., with reasonable certainty. C.L. Maddox, Inc. v. Benham Group, Inc., 88 F.3d 592, 601 (8th Cir. 1996) (internal quotations omitted). To that end, Ms. Morelock has referenced provisions of the Agreement that were not addressed in Mr. Dye's calculations. Upon careful review of her report, it appears to the Court that she is not offering any legal conclusions or interpreting how the Agreement should be applied. See Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC, 2011 WL 2295269, at *5 (S.D. Fla. June 8, 2011) ("[a] rebuttal expert can testify as to the flaws that she believed are inherent in another expert's report that implicitly assumes or ignores certain facts."). Moreover, to the extent Schnuck is challenging Ms. Morelock's objectivity, any questions regarding bias and credibility are to be resolved by the jury and can be addressed on cross-examination. American Modern Home Ins. Co. v. Thomas, No. 4:16CV215CDP, 2018 WL 4404723, at *7 (E.D. Mo. Sept. 17, 2018).

For these reasons, Schnuck's motion to exclude Ms. Morelock's report and testimony, as it relates to claims for inventory loss and claw backs, will be denied.

**Michael Powell**

Michael Powell is an independent consultant working primarily in the retail and supply chain fields, including grocery retail. He was retained by Schnuck to analyze XPO's work performance and opine as to whether XPO "performed the services necessary for the proper, accurate and efficient operation of the NorthPark Facility." Mr. Powell concludes that XPO

failed to successfully commence operations at NorthPark and continued to fail in operating NorthPark. He opines that these failures led to significant impacts on Schnuck's business and reputation in the marketplace arising from, *inter alia*, lack of product availability in the stores, product loss in the warehouse and stores, and additional operating expenses. Mr. Powell also concludes that the "aftermath of the crisis was extremely costly for [Schnuck] in terms of loss of revenue, loss of profit and additional operating costs."

XPO moves to exclude Mr. Powell's testimony as unreliable on the grounds that he has inappropriately offered an opinion on damages and in doing so failed to consider and rule out alternative causes - namely Schnuck's union avoidance strategy. Schnuck responds that Mr. Powell's report and testimony do not purport to opine on Schnuck's damages. Indeed, his report and testimony contain no damages calculations. Rather, Mr. Powell offers an opinion as to whether XPO met industry standards in its operation of NorthPark and how that impacted Schnuck's business as a whole.

Schnuck further responds that Mr. Powell was not required to consider potential alternative causes of this impact to render his opinion because he is not an expert in labor relations, store-level non-solicitation policies, or any other union-related topic. Thus, opining on these matters would have taken him out of his areas of expertise. Lastly, Mr. Powell's opinion on the impact on Schnuck's business is helpful to the jury because it analyzes the effect of XPO's failures in the context of the complex grocery and logistics industries—a task that is beyond the knowledge of a lay person.

Expert witnesses are permitted to testify about "industry standards and practices and the effect of specific events on [a party's] business[] given those standards and practices." See Med. Sales & Consulting Group v. Plus Orthopedics USA, Inc., 08CV1595 BEN BGS, 2011 WL

290986, at *2 (S.D. Cal. Jan. 27, 2011). In this respect, Mr. Powell's testimony is both relevant and admissible. With regard to Mr. Powell's opinion testimony about the impact of XPO's alleged failures at NorthPark on Schnuck's business in terms of lost profits and additional operating costs, the Court has ruled these are not recoverable damages. Nevertheless, because the impact of operational issues could be relevant to the issue of compliance with prevailing industry standards, the Court will reserve ruling on that aspect of Mr. Powell's opinion subject to an offer of proof.

Further, the fact that Mr. Powell did not consider any evidence about the impact of Schnuck's union avoidance strategy in forming his opinions about the cause of the problems at NorthPark is not a basis for excluding his opinions because a party's state of mind or motivation is not relevant in a breach of contract case where the only issue is the parties' performance. <u>HM Compounding Servs., LLC .v Express Scripts, Inc.</u>, 349 F. Supp. 3d 794, 804 (E.D. Mo. 2018) (citing <u>In re Genetically Modified Rice Litigation</u>, 666 F. Supp. 2d 1004, 1025 (E.D. Mo. 2009)). Accordingly, XPO's motion to exclude Mr. Powell's testimony will be denied in part.

**Jerry Davis**

Mr. Davis is a warehouse management industry consultant focused on logistics issues. He was retained by XPO to opine as to whether the parties acted in accordance with prevailing industry standards with respect to NorthPark and to rebut the report of Schnuck's industry expert Michael Powell. Mr. Davis concludes that Schnuck failed to act in accordance with industry standards in several respects and that these failures collectively caused the operational issues experienced at NorthPark. In particular, he points to Schnuck's decisions to start up in early July, leaving insufficient time for setup and training of equipment, systems and personnel; and to begin operations in the face of numerous construction and finishing defects. Mr. Davis further

concludes that XPO operated NorthPark in accordance with industry standards "to the extent reasonably possible under the circumstances."

In his rebuttal opinions, Mr. Davis notes that Mr. Powell failed to consider key documents and testimony, including, *inter alia*, the document drafted by Schnucks project manager Ken Kennedy to collect and disseminate the "lessons learned" during the NorthPark project. Kennedy and his staff interviewed a number of employees in several functional areas within Schnucks to identify accomplishments and "what did not work well." In addition, Mr. Powell did not consider the impact that Schnuck's strategy and goal of eliminating its union workforce at Bridgeton and using non-union workers at NorthPark had on operations.

Schnuck moves to exclude Mr. Davis' opinions because they are based on the premise that Schnuck's actions were motivated for reasons unrelated to minimizing the startup operational issues, namely union avoidance and cost reduction, and that a party's motivation or state of mind is not a proper subject of expert testimony. Schnuck further argues that Mr. Davis' interpretations of the Agreement and conclusions regarding the parties' obligations under the Agreement are likewise inadmissible because they amount to legal conclusions.

In response, XPO argues that Mr. Davis' statements about Schnuck's "intent" are admissible because they consist of inferences drawn from Schnuck's own documents and statements made by Schuck's employees. Citing Cement-Lock v. Gas Tech. Inst., 2007 WL 6947911, at *2 (N.D. Ill. Dec. 11, 2007), XPO asserts that rebuttal opinions relating to the decision-making of a company rather than an element of intent in a cause of action are admissible. XPO further argues that Mr. Davis' rebuttal opinions regarding whether Schnuck acted in accordance with industry standards necessarily implicate the Agreement but that Mr. Davis is not expressing any legal opinions about a breach of the Agreement.

Under the Agreement, XPO was obligated to perform the services necessary for the "proper, accurate and efficient operation" of NorthPark "in accordance with prevailing warehousing industry practices," and Schnuck was obligated to pay XPO a weekly Warehousing Fee for its warehouse management services and provide information and other assistance required by XPO to perform those services. Mr. Davis concludes that XPO operated NorthPark in accordance with industry standards to the extent possible and that Schnuck "failed to meet its obligations to fully construct and successfully take possession of NorthPark"; that Schnuck "departed" from and did not "act in accordance with" the Agreement; and that Schnuck acted "contrary" to its "obligations under the Operating Agreement."

FRE 704(a) permits testimony embracing an ultimate issue but requires exclusion of any testimony providing a legal conclusion. Expert opinions can embrace the ultimate issue of *fact*, such as whether standards or practices are applicable to a given situation and whether those standards or practices were met in a particular situation. See Argus Health Sys., Inc. v. Benecard Servs., Inc., No. 10-00187-CV-W-JTM, 2011 WL 5822408, at *1 (W.D. Mo. Nov. 16, 2011); AXIS Specialty Ins. Co. v. New Hampshire Ins. Co., No. 15-0809-CV-W-ODS, 2017 WL 445746, at *2 (W.D. Mo. Feb. 2, 2017). However, an expert cannot testify that a party's conduct in following or failing to follow certain industry standards met or failed to meet the party's contractual obligations, a legal conclusion. Id. Thus, Mr. Davis' opinion and testimony that XPO operated NorthPark in accordance with industry standards under the circumstances of this case is admissible. However, his opinions that Schnuck "failed to meet its obligations" under the Agreement; "departed" from and did not "act in accordance with" the Agreement; and acted "contrary" to its "obligations under the Operating Agreement," is at the heart of the parties' contract based claims and an impermissible legal conclusion. Accordingly, the Court will

exclude any opinion testimony from Mr. Davis as to whether Schnuck's actions constituted a breach of the parties' Agreement, but allow his testimony about whether XPO's conduct satisfied prevailing industry standards.

As for Mr. Davis' opinions regarding the impact that Schnuck's union avoidance strategy had on operations at NorthPark, those opinions are neither relevant nor admissible. First, it is not appropriate for an expert witness to opine on the question of corporate motive, intent, knowledge or state of mind. See In re Genetically Modified Rice Litigation, 666 F. Supp. 2d at 1025. Secondly, a party's state of mind or motivation is not relevant in a breach of contract case where the only issue is the parties' performance. HM Compounding Servs., 349 F. Supp. 3d at 804. Thus, the Court will exclude Dr. Davis' opinion and testimony related to union avoidance as it has no relevance to any issue at trial.

### Tom O'Brien, CPA, CFE, CFF, ABV

Schnuck designated its Controller Tom O'Brien as a non-retained expert to rebut opinions offered by XPO's expert Angela Morelock in connection with the damage calculations prepared by Schnuck's fact witness Alex Dye, among others. In his rebuttal report dated August 3, 2018, Mr. O'Brien clarified and recalculated some of Mr. Dye's damage calculations and conceded that for some of those calculations, there was insufficient backup documentation. On August 14, 2018, prior to Mr. O'Brien's deposition scheduled on August 15, and two months after fact discovery had closed, Schnuck produced 778 new documents totaling more than 11,000 pages, as well as an updated report by Mr. O'Brien. The new report relied on these documents and eliminated some of Mr. O'Brien's previous concessions regarding a lack of documentation for Mr. Dye's calculations.

XPO argues that Mr. O'Brien's new report purports to substantially change Mr. Dye's damage calculations in response to Ms. Morelock's expert opinions. XPO argues this is an improper use of expert rebuttal and that instead of rebutting Ms. Morelock's report, Mr. O'Brien is attempting to rehabilitate and bolster Mr. Dye's calculations with new methodology and supporting source data that Mr. Dye did not review and that Schnuck could have, but chose not to, produce during fact discovery. XPO moves to strike all documents produced by Schnuck on August 14, 2018 as untimely and any testimony or opinions based on those documents as improper rebuttal lacking a sufficient factual foundation. Alternatively, XPO moves to compel the continuation of Mr. O'Brien's deposition.[3]

As an initial matter, the fact testimony of Mr. Dye and the purported rebuttal expert testimony of Mr. O'Brien relates to Schnuck's claimed damages consisting of categories such as replacement cost of inventory loss, lost profits and lost store sales. As noted above, the Court has ruled in a separate order that Schnuck's claims for damages are barred to the extent Schnuck seeks to recover lost profits, "out of pocket" expenses, and "lost store sales and other" expenses. These categories of damages constitute consequential damages and are barred under the limitation of liability provisions of the parties' Agreement. Thus, any fact or expert testimony about lost profits, out of pocket expenses and lost sales is not relevant to any issue at trial.

Given the limited nature of the damages issues now before the Court, namely, replacement cost of inventory loss and potential claw back damages, the Court will allow Mr. O'Brien to proffer his testimony and opinions in both his original and supplemental rebuttal reports on these categories of damages. The Court will also grant XPO's alternative motion to continue Mr. O'Brien's deposition. In order to address any prejudice to XPO, the Court will

---

[3] According to XPO, Schnuck unilaterally terminated Mr. O'Brien's deposition after seven hours.

consider any costs associated with this additional discovery resulting from Schnuck's late disclosures.

Accordingly,

**IT IS HEREBY ORDERED** that Schnuck's Motion to Exclude XPO's Damages Expert Angela Morelock [157] is **DENIED** in accordance with the rulings herein.

**IT IS FURTHER ORDERED** that Schnuck's Motion to Exclude XPO's Expert on Prevailing Industry Standards Jerry Davis [159] is **GRANTED in part** and **DENIED in part** in accordance with the rulings herein.

**IT IS FURTHER ORDERED** that XPO's Motion to Strike SMI's Supplemental Rebuttal Expert Disclosure and Related Untimely Production and to Strike and Exclude SMI's Proffered Rebuttal Expert's Testimony [169] is **DENIED.**

**IT IS FURTHER ORDERED** that XPO's Alternative Motion to Compel Continuation of Deposition of SMI Rebuttal Expert Tom O'Brien [167] is **GRANTED**. XPO shall file with the Court its notice of intent and plan for resuming Mr. O'Brien's deposition.

**IT IS FINALLY ORDERED** that XPO's Motion to Limit or Exclude Testimony of SMI's Expert Michael Powell [171] is **DENIED in part** in accordance with the rulings herein. The Court reserves ruling on Mr. Powell's opinion testimony regarding the impact of operational issues on Schnuck's business subject to an offer of proof.

Dated this 25th day of June, 2019.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**