**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JACOBSON WAREHOUSE CO., INC., | ) | |
| d/b/a XPO LOGISTICS SUPPLY | ) | |
| CHAIN | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | Case No. 4:17-cv-00764-JAR |
| | ) | |
| vs. | ) | |
| | ) | |
| SCHNUCK MARKETS, INC. | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

**XPO'S OPPOSITION TO SMI'S MOTION TO REALIGN THE PARTIES
AND/OR FOR MODIFICATION OF THE ORDER OF PROOF AT TRIAL**

Jacobson Warehouse Co., Inc., d/b/a XPO Logistics Supply Chain, ("XPO") has been the plaintiff in this matter since day one, having filed a lawsuit against Schnuck Markets, Inc. ("SMI").  SMI's Motion to Realign the Parties and/or for Modification of the Order of Proof at Trial ("Motion" or "Motion to Realign") would have this Court erroneously believe that XPO's Complaint consists entirely of a defensive action for declaratory judgment.  This completely ignores the fact that XPO's declaratory judgment count – only one of three remaining counts in XPO's Complaint – seeks a ruling that SMI's breaches warranted termination of the parties' Amended and Restated Operating Agreement ("Agreement").  That declaratory judgment claim was mooted soon after the Complaint was filed when SMI and XPO agreed on a transition plan for NorthPark.[1]

XPO's predominant claim – which SMI's Motion all but ignores – has always been to recover from SMI nonpayment of XPO's invoices for services rendered at NorthPark, as

---

[1] SMI's own Counterclaim admits that the parties agreed to terminate the Agreement effective April 20, 2017 pursuant to a Transition Services Agreement.  *See* ECF No. 69 (Second Amended Counterclaim), ¶ 116.

reflected in XPO's Count I (breach of contract) and Count III (action on account).  XPO's claims are *entirely independent* of SMI's counterclaims; if anything, SMI's counterclaims are a defense to XPO's demands for payment pursuant to the terms of the Agreement.  Both parties should therefore be granted equal time in which to present their evidence and establish their respective burdens of proof.

In addition, SMI's Motion to Realign is untimely, having been *filed two years and four months after XPO filed its Complaint* – during which time all of XPO's and SMI's pleadings have reflected their positions as plaintiff and defendant, respectively – *and less than three weeks before trial*.  XPO would be unfairly prejudiced if the parties were realigned at this late stage as XPO has already prepared its litigation strategy, including the order of witnesses and testimony required, as the named plaintiff.  Due to the lateness of SMI's filing, a ruling on SMI's Motion is not likely to be issued until a week or less before trial, after XPO's witnesses will have made travel arrangements and set schedules with their current employers to attend the trial based on the current alignment.

This Motion is yet another attempt by SMI to advocate for pursuing consequential damages that are barred by the Agreement and by this Court's three rulings on the matter dating back to 2017.  *See* ECF No. 64, pp. 10-11, 24; ECF No. 116, p. 5; ECF No. 252, p. 16.  SMI claims that the volumes of evidence in support of its numerous counterclaims mandate that it be allowed to proceed first at trial.  ECF No. 239 (SMI Memo. in support of Motion to Realign), pp. 7-8.  Yet, even if SMI were unaware when it signed the Agreement in 2015 that the contract barred its consequential damages claims, SMI has certainly been aware of that fact since the Court's first ruling on the subject on November 29, 2017.  *See* ECF No. 64, pp. 10-11, 24.  Nevertheless, SMI has continually sought those damages, which has imposed unnecessary

burden and expense on XPO by requiring extensive fact and expert witness discovery on SMI's consequential damages claims and has greatly protracted discovery and substantive motion practice.   These tactics should not be permitted to create the false impression that SMI's claims are greater in scope than XPO's.  Whether measured by the dollar amount of damages sought (by which measure XPO's damages exceed SMI's after the Court's most recent ruling correctly granting summary judgment on SMI's consequential damage claims), or by any other measure, XPO's claims are at least as extensive as SMI's and require at least as much evidence to prove given SMI's alleged defenses.[2]

SMI has known about the nature of XPO's claims and SMI's counterclaims for nearly two and a half years.   SMI should not be permitted at this late juncture to yet again suggest that its case is greater in extent than it actually is and to use that pretext to demand that the order of proof be disrupted at the eleventh hour.   There is no legal basis for this Motion, and it should be rejected.

I.    **STANDARD OF REVIEW**

In determining whether realignment is proper, the Eighth Circuit has adopted the "actual and substantial conflict test," which essentially "provides that realignment of the parties is not required when there is an actual and substantial conflict between the parties that are sought to be realigned, even if it is not necessarily the primary dispute." *Gen. Credit Acceptance, Co., LLC v. Deaver*, No. 4:13CV00524 ERW, 2013 WL 2420392, at *5 (E.D. Mo. Jun. 3, 2013) (internal quotations and citations omitted) (denying realignment), *citing Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870 (8th Cir. 1966) (denying realignment).  Courts may exercise their discretion when deciding the order of proof.  *Anheuser-Busch, Inc. v. John Labatt Ltd.*, 39 F.3d

---

[2] After the Court's most recent rulings, SMI's alleged damages total approximately $2.5 million.  XPO's damages claim is now approximately $3 million.

1339, 1344 (8th Cir. 1996) (affirming denial of realignment).  But, the crux of the examination is

whether a the defendant has shown that the plaintiff does not bear a burden of proof; if the

plaintiff carries a burden of proof, even on a declaratory action, then it remains the plaintiff.

*Anheuser-Busch*, 39 F.3d at 1344.[3]

## II.   ARGUMENT

XPO filed suit first, and it is entitled to proceed as the plaintiff in this matter.  XPO's

Complaint has alleged a substantial controversy between it and SMI – namely, that SMI owes

XPO payment for its services at NorthPark – and it is properly identified as the plaintiff in this

action.  Neither XPO's inclusion of a declaratory action (which SMI has misinterpreted) nor

SMI's multiplicity of redundant counterclaims (all of which, in the aggregate, seek a lower

amount of damages than XPO seeks) and the cumulative volume of SMI's proffered evidence are

sufficient reason to realign the parties where, as here, the plaintiff is seeking more damages than

the defendant.   Realigning the parties at this late stage, less than two weeks before trial, would

unfairly prejudice XPO in its preparations.  SMI's Motion should be denied.

### A.   XPO'S CLAIMS AGAINST SMI ARE ACTUAL AND SUBSTANTIAL

Under the "actual and substantial controversy" tests, it is clear that XPO has

demonstrated it is the proper plaintiff in this matter.[4]  All three of XPO's counts center around its

---

[3] SMI's reliance on *W. Reserve Life Assur. Co. of Ohio v. Bratton* is particularly unpersuasive given that court's decision to ignore *Anheuser-Busch*.  No. C-04-81-LRR, 2006 WL 1418804, at *2 (N.D. Iowa May 18, 2006). Nevertheless, the circumstances of that case are distinguishable.  Here, both XPO and SMI have claims that are to be decided by the jury, whereas in that case, the plaintiff's claim was to be determined by the judge, and only the defendants had claims before the jury.  *W. Reserve*, 2006 WL 1418804, at *2.

[4] Some courts within this Circuit continue to apply the "principal purpose" test.  *See Vehicle v. Adams*, No. 3:15-CV-05121-BCW, 2017 WL 5957899, at *1 (W.D. Mo. Sep. 12, 2017).  This test gauges the alignment of the parties based on the primary reason behind the filing of the lawsuit *Gen. Credit Acceptance*, 2013 WL 2420392, at *5, *citing Wagner*, 367 F.2d at 870.  Even under this test, it is clear from the Complaint that XPO specifically sought "damages from [SMI's] breach of the Agreement including, but not limited to, the amount of [money SMI] refused to pay."  ECF No. 1, ¶ 36.  The fact that SMI may have defenses to XPO's allegations that also support its counterclaims is not sufficient reason to overturn the process by which XPO correctly and appropriately exercised its rights to have the courts decide this matter.

claim that SMI owes it money for services rendered.  In defense, SMI has alleged that XPO failed to fulfill its contractual obligations and, therefore, no money is owing.  SMI has parlayed its defense into counterclaims against XPO, which seek not only to confirm SMI's failure to pay XPO as justified but also to demand additional payment from XPO to SMI based on XPO's alleged negligence and/or tortious conduct.   But, these counterclaims do not take away from the fact that XPO has raised a substantial claim against SMI on which it bears the burden of proof. While one could possibly argue that both parties must demonstrate not only their own compliance, but also the other parties' non-compliance, with the Agreement, a ruling on SMI's counterclaims would not resolve XPO's claims.  At most, a ruling in XPO's favor on SMI's counterclaims would demonstrate that XPO does not owe SMI money, but it would not necessarily address whether and how much SMI owes XPO.

SMI relies on the fact that XPO references SMI's actions in its Complaint, such as SMI's insistence that operations at NorthPark begin before the building was ready for operations, as proof of why the parties should be realigned.  ECF No. 239, pp. 2, 6.  But, simply because XPO anticipated SMI's defenses to XPO's allegations or raised facts illustrative of why any non-performance by XPO may be excused is insufficient reason to realign the parties.  SMI's arguments completely ignore the fact that XPO has sought relief solely based on SMI having failed to pay XPO for its services and that XPO's counts stand apart from any allegation of negligence, tort, or fraud as raised in SMI's counterclaims (*i.e.*, whether there was negligence, tort, or fraud, SMI owes XPO payment on XPO's invoices).  Indeed, SMI's counterclaims logically follow as defenses to XPO's demand for payment.

Moreover, and perhaps most importantly, XPO, not SMI, sought the Court's intervention first.  *See, e.g., Anheuser-Busch*, 89 F.3d at 1344 ("The District Court understandably chose to

allow the actual plaintiff, the party that filed the lawsuit, to proceed first."); *Everlight Electronics Co., Ltd. v. Nichia Corp.*, No. 12-cv-11758, 2014 WL 4639402, at *1 (E.D. Mich. Sep. 16, 2014) ("Moreover, the Court cannot ignore that Everlight chose to bring the instant action rather than Nichia filing this action to protect its patent rights.").  SMI has not demonstrated, and cannot demonstrate, why the presumption that the plaintiff "proceed[s] first" should be overcome.  *Anheuser-Busch*, 89 F.3d at 1344.

> ***It is elemental that the party who files a lawsuit is designated as the plaintiff.*** This designation is based on the party's burden to prove the claims initially asserted in the lawsuit.  ***A court normally will not realign the parties from their original designations unless the plaintiff no longer retains the burden to prove at least one of its claims*** or if subsequent events in the case significantly shift the ultimate burden of proof from the plaintiff to the defendant."

*Ericsson Inc. v. Harris Corp.*, No. CIVA3:98CV2903D, 1999 WL 604827, at *2 (N.D. Tex. Aug. 11, 1999) (emphasis added).  XPO sought legal review of the parties' dispute first and is entitled to present its case first.

**B.   XPO'S DECLARATORY ACTION IS INSUFFICIENT REASON TO REALIGN THE PARTIES**

SMI further argues that it should be named plaintiff in this case, or given the priority in offering proof before the jury, because XPO's Count II (for declaratory relief) is indicative of its defensive position, for "XPO…would not allege SMI impeded XPO's ability to manage the warehouse, *but for* SMI's original claim that XPO breached the agreement…."  ECF No. 239, p. 5.  SMI has entirely misread XPO's Complaint.

Even a cursory reading of XPO's Count II indicates that it sought declaratory relief because monetary damages "would not provide certainty as to the parties' continuing obligations, if any, under the Agreement."  ECF No. 1, ¶ 41.  XPO then specifically sought the Court's findings on three issues:  (1) SMI being in breach of the Agreement, (2) XPO properly

ending the Agreement *such that it owed no further duties to SMI*, and (3) SMI needing to pay XPO any and all unpaid warehouse fees. *Id.*, ¶ 42. Within the context of subparts (1) and (3), which request the Court to find SMI owes XPO money, it is clear that asking for a finding that SMI is in breach of the Agreement in subpart (2) is required as part of granting XPO full recovery of its damages. Therefore, contrary to SMI's representations, there is no "defensive" request that only asks the Court to find XPO in compliance with the Agreement so as to avoid payment of damages pursuant to any of SMI's counterclaims.

 "[T]he party that has the burden of proof," and therefore opens and closes the case, is "typically the plaintiff, even where the plaintiff seeks only or even primarily a declaratory judgment." *L-3 Communications Corp. v. OSI Sys., Inc.*, 418 F.Supp.2d 380, 383 (S.D. N.Y. 2005) (relying on *Anheuser-Busch* and denying realignment in declaratory action in which the defendant raised tort and contract counterclaims) (internal quotations and citations omitted). "After all, it is the declaratory plaintiff who volunteers to bring the case in this forum at this time." *Id.*

In fact, courts routinely deny a defendant's request to realign the parties simply because a complaint includes a request for declaratory relief. *See, e.g., American Home Assur. Co. v. Merck & Co., Inc.*, 462 F.Supp.2d 435, 442 (S.D. N.Y. 2006) (refusing to realign parties where plaintiff sought declaration of its rights as "***this question is still very much the central dispute in this action***") (emphasis added); *Everlight Electronics*, 2014 WL 4639402, at *1 (denying realignment based on declaratory judgment claims because the plaintiff chose to file first and both parties bore the burden of proof on distinct counts), *primarily relying on Anheuser-Busch*, 89 F.3d at 1344; *GMIS, Inc. v. Health Payment Review, Inc.*, No. Civ. A. 94-576, 1995 WL 33101, at *2 (E.D. Penn. Jan. 21, 1995) (denying motion to realign when only plaintiff's claim

for declaratory judgment remained because **"[t]his Court cannot lose sight of the fact…that it was not [the defendant] that chose to come to court"**) (emphasis added); *Travelers Lloyds Ins. Co. v. Cruz Contracting of Texas, LLC*, No. 5:16-CV-759-DAE, 2017 WL 5202890, at *9 (W.D. Tex Mar. 17, 2017) (refusing to realign parties where plaintiff brought declaratory judgment claim because defendants' counterclaims did not remove plaintiff's burden of proof); *Litton Sys., Inc. v. VHC, Inc.*, No. CIV. A. 398CV0357-P, 1998 WL 386164, at *1 (N.D. Tex. Jul. 8, 1998) (same).

In this case, XPO filed suit first to protect its right to receive payment.  To that end, and separate from SMI's counterclaims, XPO's declaratory action seeks the Court's imprimatur on *its* actions such that SMI is mandated to pay *all* sums owed to XPO.  In order to seek full payment, XPO must also demonstrate why and whether it may have been excused from performance under the Agreement, including due to SMI's non-performance.  Therefore, while SMI's evidence in support of its counterclaims may provide a defense as to why SMI does not owe XPO money, such position does not usurp XPO's burden of proof in this litigation.  *See Ericsson Inc.*, 1999 WL 604827, at *3; *Travelers Lloyds Ins.*, 2017 WL 5202890, at *9.

## C.   SMI'S CLAIMED VOLUME OF EVIDENCE IS IRRELEVANT

SMI leans heavily on the fact that it has identified more claims, produced more documents, and named more witnesses as evidence of why it should go first, whether as the plaintiff or in offering proofs.  ECF No. 239, pp. 7-8.  But, volume alone cannot dictate the alignment of the parties.  *Green Constr. Co. v. Kansas Power & Light Co.*, 1 F.3d 1005, 1011 (10th Cir. 1993) (affirming magistrate judge's denying realignment of parties despite plaintiff seeking only $422,000 in damages, whereas defendants sought $12.9 million); *Larson v. Farmers Co-op. Elevator of Buffalo Center, Iowa*, No. C 96-3138-MWB, 1999 WL 33656971, at

*5 (N.D. Iowa Jun. 11, 1999) (citing *Green Constr. Co.* to support its ruling against realigning the parties solely because the plaintiff sought nominal damages whereas the defendants sought "significant actual damages"), *aff'd* 211 F.3d 1089 (8th Cir. 2000); *Litton Sys.*, 1998 WL 386164, at *1 (denying realignment simply because the plaintiff had not claimed monetary damages but the defendant had).

SMI attempts to shift the risk of its strategic decision to identify multiple claims requiring volumes of evidence onto XPO, but such action must fail; both parties bear separate burdens of proof. Whatever the breadth, scope, and volume of either parties' evidence, this Court should provide that both sides are granted an equal amount of time in which to present their cases and defenses. SMI should not qualify for more time in its presentation simply because it has chosen to pursue more counterclaims. SMI will have to efficiently utilize the time allocated to it to present its case to the jury and this Court

Besides, with the Court's most recent ruling on the parties' cross-motions for summary judgment, SMI's remaining counterclaims and volume of evidence is significantly smaller. *See* ECF No. 252, p. 16. In fact, XPO's claim for damages is now greater than SMI's (approximately $3 million versus $2.5 million). Likewise, any of SMI's evidence pertaining to consequential damages is now irrelevant.

SMI further argues that judicial efficiency will be served by permitting it to proceed first because XPO's claims stem from SMI's demand that XPO begin operations at NorthPark before the building was ready and that "SMI has the fundamental background information regarding the planning and preparations for [NorthPark] that will facilitate the jury's understanding." ECF No. 239, p. 7. This argument ignores the fact that XPO was involved in the planning and preparations for its own operations at NorthPark, which included discussions with SMI about

why beginning operations before the building was ready would create the operational issues about which SMI now complains. XPO therefore has substantial firsthand knowledge of NorthPark's numerous construction defects that caused operational issues and is fully prepared to present those issues to the jury in its case.

### D.   SMI'S REQUEST IS UNTIMELY AND PREJUDICIAL TO XPO

Finally, SMI's request is prejudicially untimely and stands as additional reason why its Motion should be denied.  This Motion was filed just three weeks before trial is set to begin, meaning that, by the time the parties complete briefing this request and the Court is able to rule on it, the parties will be within days of trial.  In the meantime, XPO has spent significant time and expense preparing for trial as the plaintiff and such position has already been calculated into XPO's witness list, exhibit list, witness preparations, drafting of trial outlines, and other litigation strategy determinations.  Moreover, SMI has had notice of two years and four months as to the exact nature and bases of XPO's claims against it.

There is no belated surprise that could justify SMI's filing this Motion at this stage in the litigation.[5]  Realigning the parties, whether in name or "only" in order of proof, would prejudice XPO in its ongoing preparations for this action.

## III.   <u>CONCLUSION</u>

Both XPO and SMI bear the burden of proof on their individual claims, notwithstanding that there may be some overlap in the facts.  *Anheuser-Busch*, 89 F.3d at 1343-44.  SMI's counterclaims are appropriately raised as defenses to XPO's demand for full payment. Therefore, it would be appropriate for this Court to "allow [XPO,] the actual plaintiff, the party that filed the lawsuit, to proceed first."  *Id.* at 1344.

---

[5] Additionally, the parties were first preparing for trial in February 2019, meaning that SMI passed up yet another opportunity to raise this Motion in a more timely fashion.

Respectfully submitted,

THOMPSON COBURN LLP

Dated:  June 25, 2019

*/s/ Lawrence C. Friedman*
Lawrence C. Friedman, #34382MO
Mark A. Mattingly, #56536MO
One U.S. Bank Plaza, Suite 2700
St. Louis, Missouri  63101
314-552-6000
FAX 314-552-7000
lfriedman@thompsoncoburn.com
mmattingly@thompsoncoburn.com

*Attorneys for Plaintiff Jacobson Warehouse*
*Company, Inc. d/b/a XPO Logistics Supply*
*Chain*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2019, **XPO's Response in Opposition to SMI's Motion to Realign the Parties and/or for Modification of the Order of Proof at Trial** was filed electronically with the Clerk of Court to be served upon the following counsel of record:

Greensfelder, Hemker & Gale, P.C.
Gregory C. Mollett
Clark W. Hedger
10 South Broadway, Suite 2000
St. Louis, Missouri 63102

*/s/ Lawrence C. Friedman*