# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

JACOBSON WAREHOUSE COMPANY,   )
INC., d/b/a XPO LOGISTICS SUPPLY   )
CHAIN,   )
                          )
          Plaintiff,   )
                          )
      v.   )   No. 4:17-CV-00764 JAR
                          )
SCHNUCK MARKETS, INC.,   )
                          )
          Defendant.   )

## MEMORANDUM AND ORDER

This case came before a jury for trial on July 8, 2019. Plaintiff Jacobson Warehouse Company, Inc. d/b/a XPO Logistics Supply Chain ("XPO") asserted claims against Defendant Schnuck Markets, Inc. ("Schnucks") for breach of contract and action on account.[1] Schnucks counterclaimed for breach of contract, breach of the duty of good faith and fair dealing, negligence, fraud, and conversion. On July 18, 2019, at the close of all the evidence, the parties moved for directed verdict on their respective claims. The Court directed a verdict in favor of XPO on Schnucks' counterclaims for negligence and fraud and denied XPO's motion for directed verdict on Schnucks' counterclaims for breach of contract, breach of the duty of good faith and fair dealing, and conversion. The Court also denied Schnucks' motion for directed verdict on XPO's claims for breach of contract and action on account.

The jury returned its verdict on July 19, 2019 as follows:

On the claim of XPO for breach of contract against Schnucks, we, the undersigned jurors, find in favor of Schnucks;

---

[1] At the close of all the evidence in the case, XPO's claim for declaratory judgment (Count II) was dismissed as moot. (Doc. No. 347).

On the claim of XPO for action on account against Schnucks, we, the undersigned jurors, find in favor of XPO. We, the jury, assess the damages of XPO at $3,166,837.01;

On the claim of Schnucks for breach of contract against XPO, we, the undersigned jurors, find in favor of Schnucks. We, the jury, assess the damages of Schnucks at $147,000;

On the claim of Schnucks for breach of the duty of good faith and fair dealing against XPO, we, the undersigned jurors, find in favor of XPO;

On the claim of Schnucks for conversion against XPO, we, the undersigned jurors, find in favor of XPO.

On August 1, 2019, the Court entered judgment based on the jury's verdict. The Court found XPO to be the "net-prevailing party," both in terms of the dollars awarded and the number of claims won and successfully defended against and ordered that costs be assessed against Schnucks.

On August 22, 2019, XPO filed its motion for bill of costs, asserting entitlement to costs pursuant to Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920 in the amount of $97,231.45. (Doc. No. 353). XPO has also moved for attorneys' fees and expenses in the amount of $3,524,352.91, which includes $257,521.10 for expert witness fees and $28,676.81 for other litigation expenses not taxable as "costs" pursuant to § 1920. (Doc. No. 354). These motions are fully briefed and ready for disposition.

On December 19, 2019, XPO filed a supplemental motion for bill of costs incurred after August 1, 2019 in the amount of $3,320.56 (Doc. No. 399) and a supplement to its motion for attorneys' fees seeking $152,844.00 in attorneys' fees and $11,584.62 in expenses incurred after August 1, 2019 during the post-verdict phase of this case (Doc. No. 400). Schnucks opposes XPO's supplement to its motion for attorneys' fees. (Doc. No. 401).

## I.  XPO's bill of costs

At the outset, the Court notes that XPO has withdrawn its request for payment of $180.36 for private process servers as well as handling and delivery charges totaling $790.21. XPO has also corrected a clerical error that omitted a July 5, 2019 invoice for Tom O'Brien's volume III deposition transcript in the amount of $761.50. As a result, XPO has recalculated its total taxable costs from $97,231.45 to $97,022.38. (Doc. No. 385 at 2 n.1). Schnucks objects to XPO's bill of costs on the grounds that the costs sought reflect expenses that are not recoverable under § 1920 and controlling Eighth Circuit precedent and seeks to reduce XPO's costs by $64,655.29.[2]

Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs – other than attorney's fees – should be allowed to the prevailing party." Cowden v. BNSF Railway Co., No. 4:08CV01534, 2014 WL 107844, at *1 (E.D. Mo. Jan 3, 2014). Pursuant to 28 U.S.C. § 1920, the Court may tax costs for: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the cost of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under § 1923 of this title; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828

---

[2] The Court notes that Schnucks has also objected to XPO's entire bill of costs on the ground that it improperly failed to include the affidavit required by 28 U.S.C. § 1924. Section 1924 requires that "[b]efore any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." XPO replies that its bill of costs is on the Court's own form (AO-133) as required by Local Rule 54-8.03, which contains a Declaration that closely tracks the language of § 1924. Upon consideration, the Court is satisfied that XPO has submitted the statutorily required verification and will not reject its entire bill of costs as urged by Schnucks. See Am. Equity Ins. Co. v. Recycling Res., No. 4:03CV00711 ERW, 2005 WL 1798061, at *1 (E.D. Mo. July 27, 2005).

of this title. The Court may not award costs other than those authorized by § 1920, because this section "imposes rigid controls on cost-shifting in federal courts." Cowden, 2014 WL 107844, at *1 (quoting Brisco-Wade v. Carnahan, 297 F.3d 781, 782 (8th Cir. 2002)). Upon objection by the opposing party as to authorized costs, however, the Court may exercise its discretion to grant or deny costs. Id. (citing Pershern v. Fiatallis North America, Inc., 834 F.2d 136, 140 (8th Cir. 1987)).

### A. Transcript costs

### 1. Stenographic and video-recorded transcripts

The parties took 29 depositions in this case – of which XPO noticed 13. (Declaration of Lawrence C. Friedman ("Freidman Decl."), Doc. No. 355-1 at ¶ 7). Nineteen of these 29 depositions were both printed and video-recorded. XPO seeks to recover costs of $36,402.10 for printed transcripts and $23,249.50 for electronically recorded transcripts, for a total of $58,861.39.[3] This amount includes fees for expedited transcripts and other miscellaneous costs, addressed separately below. In its supplemental motion for bill of costs, XPO seeks additional costs of $2,975.33 for electronically recorded deposition and trial transcripts obtained for use in this case.

Schnucks first objects on the grounds that XPO may not recover both types of deposition costs and requests that XPO's video recording costs for these 19 depositions be disallowed in the amount of $21,465.75. Schnucks argues that even though XPO is seeking video services for all 19 recordings in addition to stenographic transcripts, it did not use 18 of those recordings at trial. Moreover, XPO listed only four of the 19 witnesses on its deposition designations for trial. (See

---

[3] XPO has revised its costs for deposition transcripts to reflect four invoices that were incorrectly classified as printed transcripts and to include one invoice for a videotaped transcript that had been omitted from its summary invoice spreadsheets. XPO has also subtracted costs for handling and delivery. (Doc. No. 385 at 4 n.4).

Doc. No. 244). Schnucks also argues that the video-recorded depositions of Ken Kennedy, Steve Carroll, Steven Mayer, Alex Dye, Rachel Steele, Jaime Ryberg, Cathy Chambers, Todd Schnuck, Michael Powell, Tom O'Brien, Jim Arnold, Doug Steffeney, Angela Morelock, John Kettman, Liz Spengemann, and Shannon Christensen were unnecessary, as demonstrated by their live testimony at trial.

In response to Schnucks' objections, XPO states that it relied on the deposition transcripts – both printed and electronic – throughout the course of the litigation, and notes that approximately 60% of the exhibits referenced and attached to its summary judgment filings were deposition transcripts. In addition, XPO states that the parties routinely videotaped depositions either because the deponents were high-ranking managers and directors or former employees of either party and/or to ensure their testimony was captured in a manner most useful to a jury in case the witness was unavailable by the time of trial. (Declaration of Lawrence C. Friedman ("Friedman Decl."), Doc. No. 355-1 at ¶ 7). In fact, Schnucks videotaped all but four of the witnesses it called for deposition (see Doc. No. 385-1), and the depositions of Mark Doiron and Dennis Haner were played during trial because they were former employees and/or unavailable to testify live.

The Eighth Circuit permits recovery of costs for both printed transcripts and video recordings of the same deposition if both were "necessarily obtained for use in the case." Stanley v. Cottrell, Inc., 784 F.3d 454, 465-66 (8th Cir. 2015) (citation omitted); Hogan Logistics, Inc. v. Davis Transfer Co., Inc., No. 4:16CV1541 CAS, 2018 WL 3483077, at *3 (E.D. Mo. July 19, 2018); 28 U.S.C. § 1920(2). Transcripts are "necessarily obtained for use in the case" where testimony was used in motions or needed for impeachment at trial, the deponent was on the losing party's trial witness list, or the deposition was "necessary to the issues" when taken, even

if "use of a deposition is minimal or not critical to that party's ultimate success." Cattanach v. BNSF Ry. Co., No. CV 13-1664 (JRT/JSM), 2016 WL 6915507, at *4 (D. Minn. Oct. 31, 2016), report and recommendation adopted, No. CV 13-1664 (JRT/JSM), 2016 WL 6916803 (D. Minn. Nov. 21, 2016) (internal quotations and citation omitted). A "deposition taken within the proper bounds of discovery will normally be deemed to be 'necessarily obtained for use in the case.' " Id. Costs of a videotaped deposition may be taxed provided there is adequate support for the expense. King v. Turner, Civ. No. 05–388 (JRT/FLN), 2007 WL 1219308, at *4 (D. Minn. April 24, 2007).

Courts in this district have allowed recovery of costs for both stenographic transcription and video recording of depositions where the prevailing party offers a persuasive reason for obtaining the video deposition, such as the importance of the witness and the likelihood that each witness would be unavailable for trial. See, e.g., Nat'l Ben. Programs, Inc. v. Express Scripts, Inc., No. 4:10CV00907 AGF, 2012 WL 2326071, at *3 (E.D. Mo. June 19, 2012). Further, even if a deposition is not introduced at trial, this alone does not establish that the deposition did not reasonably seem necessary at the time it was taken. Gierer v. Rehab Med., Inc., No. 4:14-CV-1382 CAS, 2018 WL 1397532, at *3 (E.D. Mo. Mar. 20, 2018). A district court has discretion to award costs if the deposition was not "purely investigative," Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006), and "reasonably seemed necessary at the time they were taken," Zotos v. Lindbergh School Dist., 121 F.3d 356, 363 (8th Cir. 1997). The Court finds that under the circumstances of this complex and fiercely litigated case, XPO has established that both printed and electronic transcripts of the same depositions were necessary for the reasons it asserts. Accordingly, Schnucks' objections to XPO's costs for both stenographic transcription and video recordings will be overruled.

## 2. Expedited transcripts

Next, Schnucks objects to XPO's costs for expedited transcripts for five depositions (Michael Powell; Todd Schnuck; Tom O'Brien (8/29/18 and 7/1/2019); and Liz Spengemann) because XPO has not shown that expedited transcripts were necessary under the circumstances. Schnucks further argues that XPO did not submit itemized costs for these depositions that indicate how much of the total fees were attributable to expediting costs and thus, its costs should be reduced by 50 percent of the invoiced amount for each of the five depositions.

This Court has allowed the cost of expedited transcripts in some cases and denied it in others, based on evidence offered as to why expedited transcripts were reasonable and necessary under the circumstances of each case. Hogan Logistics, 2018 WL 3483077, at *2; Smith v. Toyota Motor Corp., No. 2:16CV24 ERW, 2018 WL 3496491, at *2 (E.D. Mo. July 20, 2018). Here, XPO responds that it sought expedited processing of transcripts due to delayed scheduling and/or pending deadlines. Specifically, it was required to order expedited transcripts of Schnuck, Powell and O'Brien because each was taken after the close of fact discovery on June 5, 2018, with little more than two months before the dispositive motion deadline of August 20, 2018. Expedited transcripts were also necessary so that XPO's experts could review them as part of their rebuttal reports. (See Davis Expert Report, Doc. No. 195-2). Moreover, O'Brien's July 1, 2019 deposition was necessitated by this Court's June 25, 2019 Order addressing XPO's need for additional discovery resulting from Schnucks' late disclosure of documents. (Doc. No. 280).

With regard to Spengemann, XPO deposed her on May 28, 2019 – after Schnucks narrowed its list of 28 new witnesses as a belated supplement to its initial disclosures. (Doc. No. 355-3). XPO asserts that it needed Spengemann's deposition transcript to file a motion in limine to limit her testimony concerning excluded categories of damages. (Doc. No. 276, 322).

The Court believes XPO's request for the costs of the five expedited transcripts is justified given the exigencies and deadlines which arose during this litigation. <u>Glastetter v. Sandoz Pharms. Corp.</u>, No. 1:97–CV–00131, 2000 WL 34017154, at *4 n.3 (E.D. Mo. Oct. 3, 2000). Accordingly, Schnucks' objections to these costs will be overruled.

### 3. Miscellaneous deposition transcription fees

Lastly, Schnucks objects to XPO's costs associated with condensed transcripts ($420.00); "exhibit management" ($1,153.85); scanning of exhibits/exhibit package ($1,084.00); rough transcripts ($2,893.70); and e-transcript/PDFs ($210.00), totaling $5,761.55.[4] Schnucks contends that such costs are generally disallowed because they are incurred primarily for counsel's convenience. XPO responds that courts frequently tax such costs, particularly in light of the complexity of the case or the parties' agreements regarding management of the case.

Given the scope of Schnucks' allegations, the amount of damages sought, and the expansiveness of Schnucks' discovery requests, the Court finds it was reasonably necessary for XPO to incur these costs for use in this complex case. <u>See</u> <u>McDowell v. Safeway Stores, Inc.</u>, 758 F.2d 1293, 1294 (8th Cir. 1985) ("[T]he court should determine that transcripts were not obtained primarily for the convenience of parties but were necessary for use in the case."). Accordingly, it will overrule Schnucks' objection with respect to these costs.

### B. Costs for printing

XPO printed $9,925.78 worth of black-and-white pages at a cost of $0.08 per page and $7,328.80 worth of color pages at a cost of $0.21 per page, for a total of $17,254.58. In its supplemental motion for bill of costs, XPO seeks additional costs of $198.24 for printing black-and-white copies of exhibits and other documents at a cost of $0.08 per page, $15.33 for color

---

[4] As noted above, XPO has withdrawn its request for handling and delivery charges totaling $790.21.

copies at a cost of $0.21 per page, and $131.66 for billable labor and overtime associated with printing (as was necessary to have copies available for trial) for a total of $345.23.

Schnucks objects to XPO's copying charges in the absence of sufficient documentation. XPO responds that it has submitted records with the date of printing, timekeeper responsible for printing, case-identifying information, and amounts charged, and states that a specific detail of what copies were made would be "unnecessarily burdensome," citing Scott v. Dyno Nobel, Inc., No. 4:16-CV-1440 HEA, 2018 WL 6830110, at *2 (E.D. Mo. Dec. 28, 2018). The Court agrees. Schnucks' objections regarding XPO's costs for printing are overruled.

### C. ESI-related charges

Schnucks objects to XPO's $20,506.41 in costs for "technical services" associated with the production of electronically stored information (ESI), including costs for tasks performed for "ease of case team review;" tasks related to deposition preparation or expert witness preparation; tasks associated with Schnucks' production; Bates labeling; storage fees and user fees for Relativity, an ESI platform; analytical tasks such as email threading; and "re-producing" productions. Schnucks argues that because XPO has not provided sufficient detail in support of these costs and has submitted costs that are not taxable, the Court should reduce XPO's requested costs by 75 percent, or $15,379.81. XPO responds that its costs are taxable given the parties' stipulated ESI protocol and other agreements regarding the exchange of information during discovery and at trial.

Although the Eighth Circuit has not yet addressed the extent to which ESI-related charges are taxable under § 1920(4), other circuit courts and courts within the Eighth Circuit permit recovery of ESI costs if the costs fall within the meaning of "exemplification" or "making copies." Inline Packaging, LLC v. Graphic Packaging Int'l, LLC, No. CV 15-3183 ADM/LIB,

2019 WL 3387777, at *4 (D. Minn. July 26, 2019) (collecting cases). "[M]aking copies" has been construed inclusively to encompass the costs for the production of metadata, imaging drives, file conversion, scanning, and load file production. <u>Scott</u>, 2018 WL 6830110, at *2 (citing <u>CBT Flint Partners v. Return Path, Inc.</u>, 737 F.3d 1320, 1328 (Fed. Cir. 2013); <u>In re Online DVD-Rental Antitrust Litigation</u>, 779 F.3d 914, 927 (9th Cir. 2015)).

Here, the parties agreed to utilize ESI protocols and search terms, which in turn required XPO to utilize an ESI review platform. Both parties agreed that an ESI review platform would be a cost-effective and efficient way to review and produce relevant documents. (Friedman Decl. at ¶ 6). As part of that protocol, the parties agreed that all documents produced in the case would be Bates labeled. (Doc. No. 385-8). Courts routinely find Bates labeling costs to be taxable. <u>See</u>, <u>e.g.</u>, <u>Gregory v. Dillard's, Inc.</u>, No. 02-4157-CV-C-SOW, 2010 WL 11639506, at *3 (W.D. Mo. Mar. 1, 2010 ), *as amended by* 2010 WL 11639507 (W.D. Mo. Oct. 20, 2010).

Once XPO applied Schnucks' search terms to its collection of documents, it reviewed approximately 77,000 documents and produced 42,833 documents. <u>Id</u>. Likewise, XPO reviewed over 117,000 documents produced by Schnucks, totaling 470,187 pages. (Friedman Decl. at ¶ 6). This, according to XPO, required extensive ESI services and the assistance of a technical staff who specialize in, and have experience with, ESI. In light of the parties' stipulated ESI protocols, the Court finds XPO's storage fees and user fees for Relativity, an ESI platform, are also recoverable as an integral part of the process of document production.

With regard to XPO's other ESI-related costs for, *inter alia*, pulling documents for review and witness preparation, production processing for and re-productions to Schnucks, and e-mail threading, the Court finds these tasks or procedures to be an "indispensable component of producing a fair and accurate copy of a document or other 'material,' " <u>Jo Ann Howard &</u>

Assocs., P.C. v. Cassity, 146 F. Supp. 3d 1071, 1084 (E.D. Mo. 2015), and as such, the associated costs are recoverable. Accordingly, Schnucks' objections to these costs are overruled.

**Conclusion**

For these reasons, the Court will grant XPO's motion for bill of costs and tax as costs the following: transcript costs of $61,836.72[5]; printing costs of $17,599.81[6]; and ESI-related costs of $20,506.41. The total amount taxed as costs is $99,942.94.

**II.    XPO's motion for attorneys' fees**

XPO seeks $3,238,155.00 in attorneys' fees; $257,521.10 in fees for expert witnesses; and $28,676.81 in expenses that are not taxable costs pursuant to 28 U.S.C. § 1920, for a total award of $3,524,352.91. In its supplement to its motion for attorneys' fees, XPO seeks an additional $152,844.00 in fees and $11,584.62 in expenses incurred in briefing its motion for fees and expenses; responding to Schnucks' post-verdict motions; and briefing its motions for judgment as a matter of law and to alter or amend judgment.

Missouri requires litigants to pay their own attorneys' fees, following the American Rule, unless provided for by contract or statute. Lift Truck Lease & Serv., Inc. v. Nissan Forklift Corp., No. 4:12-CV-153 CAS, 2013 WL 6243172, at *2 (E.D. Mo. Dec. 3, 2013) (quoting Essex Contracting, Inc. v. Jefferson Cnty., 277 S.W.3d 647, 657 (Mo. 2009) (cited case omitted)); see also In re Peabody Energy Corp., No. 4:18CV306 RLW, 2019 WL 1367769, at *3 (E.D. Mo. Mar. 26, 2019). Under any exception to the American Rule, the litigant must be the prevailing party to be entitled to an award of attorneys' fees.

---

[5] This total represents costs of $58,861.39 from XPO's original motion and $2,975.33 from its supplemental motion.

[6] This total represents printing costs of $17,254.58 from XPO's original motion and $345.23 from its supplemental motion.

Where "a contract provides for the payment of attorneys' fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party." <u>DocMagic, Inc. v. Mortgage P'ship of Am., LLC</u>, 729 F.3d 808, 812 (8th Cir. 2013). "Under Missouri law [courts] must enforce a contract as written and according to the plain meaning of the words in the contract when the contract is clear and unambiguous." <u>Hogan Logistics</u>, 2018 WL 3483077, at *5 (quoted case omitted).

XPO asserts that an award of attorneys' fees and expenses is mandated in this case by the Court's Judgment identifying XPO as the "net-prevailing party" and the parties' Amended and Restated Operating Agreement ("Agreement"), specifically Sections 6(h) and 5(b). XPO contends these two fee-shifting provisions authorize it to seek repayment of all of its fees from Schnucks. In response, Schnucks argues that the Agreement does not have an attorneys' fees provision broad enough to apply to XPO's action on account claim and that the fee-shifting provisions relied upon by XPO are limited to very specific situations that do not apply in this case. In further response, Schnucks argues that because the jury found in its favor on all issues relating to breach of the Agreement, it is the "main issue" prevailing party. As such, XPO is not entitled to attorneys' fees and expenses under the Agreement it was found to have breached. For the same reasons, Schnuck opposes XPO's motion for supplemental attorneys' fees.

Because a party must prevail to be entitled to attorneys' fees under any exception to the American Rule, the Court will first address Schnucks' contention that it is the prevailing party. Missouri has two different analytical approaches for determining a prevailing party. The first approach is the "main issue" approach, which turns on which party prevailed on the main issue in dispute. <u>DocMagic, Inc. v. Mortgage P'ship of Am., L.L.C.</u>, 729 F.3d 808, 813-14 (8th Cir. 2013) (citing <u>Ken Cucchi Constr., Inc. v. O'Keefe</u>, 973 S.W.2d 520, 528 (Mo. Ct. App. 1998)).

A court must decide which issue is the "main [one] in dispute" from the perspective of the party seeking fees, a case–specific inquiry. <u>Restored Images Consulting, LLC Dr. Vinyl & Assocs., Ltd. v. Collins</u>, No. 4:14-CV-527-DGK, 2016 WL 4275807, at *1 (W.D. Mo. Aug. 12, 2016) (citation omitted). A party must prevail on the main issue in dispute, though it need not recover all of the relief it originally asked for. <u>Ken Cucchi Constr.</u>, 973 S.W.2d at 528.

The second approach is the "net-prevailing party" approach, which essentially calculates which party received " 'the most points' … at the end of the contest." <u>DocMagic, Inc.</u>, 729 F.3d at 813; <u>see also</u> <u>Weitz Co. v. MH Washington</u>, 631 F.3d 510 (8th Cir. 2011). "Points" may be dollars awarded, or it may be the number of claims that the party won and successfully defended against." <u>DocMagic, Inc.</u>, 729 F.3d at 81-14. As noted by XPO, the Eighth Circuit has determined that it need not "resolve the tension" between the two approaches. As long as the trial court has acted reasonably and considered the totality of the case, there is no error in determining the prevailing party. <u>See</u> <u>DocMagic, Inc.</u>, 729 F.3d at 814.

The main issue in this case, from XPO's perspective, was Schnucks' alleged failure to pay XPO's invoices for warehouse management services, which encompassed XPO's claims for breach of the Agreement and action on account. XPO's breach of contract claim alleged that "[a]s a result of Schnucks' breach, XPO … suffered damages, including its unpaid Warehousing Fees"; XPO's action on account claim sought recovery for "invoices [that] were not paid by Schnucks, despite the charges being correct." XPO prevailed on its claim for action on account. It is, therefore, the prevailing party given the totality of the case under the main-issue approach. Although XPO lost on its breach of contract claim, "a party need not run the table to be a prevailing party." <u>Restored Images</u>, 2016 WL 4275807, at *1 (citing <u>Ken Cucchi Constr.</u>, 973 S.W.2d at 528).

Of the five claims Schnucks brought against XPO, breach of the Agreement, breach of the duty of good faith and fair dealing, negligence, fraud, and conversion,[7] Schnucks prevailed on one – breach of the Agreement – and recovered $147,000, less than 1% of the nearly $12 million in damages originally alleged in its counterclaim. In contrast, XPO was granted a directed verdict on Schnucks' fraud and negligence claims, prevailed on its claim for action on account, and successfully defended Schnucks' claims for breach of the duty of good faith and fair dealing and conversion. XPO recovered $3.1 million in damages, approximately 85% of the total damages it sought. Accordingly, after considering the totality of the case, the Court ruled that XPO was the net prevailing party both in terms of the dollars awarded and the number of claims won and successfully defended against. Schnucks is clearly not the prevailing party in this matter – under either the "main issue" approach or the "net prevailing party" approach.

The Court now turns to the parties' Agreement. Without question, parties to a contract are allowed to agree to contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contract dispute. Schnucks cites <u>Parkway Construction Services, Inc. v. Blackline LLC</u>, 573 S.W.3d 652 (Mo. Ct. App. 2019), as an example of an enforceable attorneys' fees provision. There, the attorneys' fees provision provided that "[t]he prevailing party ***in any dispute*** that goes beyond mediation ***arising out of or relating to this [Contract] or its breach*** shall be entitled to recover from the other party reasonable attorneys' fees, costs and expenses incurred by the prevailing party in connection with such dispute." <u>Id</u>. at 657-58. (Emphasis added.) The court interpreted the plain language of this provision broadly to allow for recovery of attorneys' fees for a contract claim which clearly "arises out of" the contract as well as for equitable claims which "relate to" the contract. <u>Id</u>. at 667-68.

---

[7] The parties stipulated to the dismissal with prejudice of Schnucks' counterclaim for breach of the Transition Services Agreement (Count VI). (Doc. Nos. 34, 35).

Unlike the parties in Parkway, XPO and Schnucks did not include such a broad provision in the Agreement. XPO and Schnucks are sophisticated business entities and could certainly have included such a provision that applied to disputes "arising out of" or "related to" their Agreement. They did not, however, "and now are accountable for the product of their negotiations." enXco Dev. Corp. v. N. States Power Co., 758 F.3d 940, 947 (8th Cir. 2014) (quoting Metro. Sports Facilities Com'n v. Gen. Mills, Inc., 470 N.W.2d 118, 125 (Minn. 1991)); see also Harleysville Ins. Co. v. Physical Distribution Servs., Inc., 716 F.3d 451, 462 (8th Cir. 2013) ("Both [parties] were sophisticated parties – each was in the business of providing products and services in exchange for fees according to terms set by contract. In this context, common sense weighs most heavily in favor of giving the parties the benefits—and misfortunes—of the clear terms of their bargain.").

Further, the provisions of the Agreement relied upon by XPO, Section 6(h) and Section 5(b), simply do not apply in this case. Section 6(h) provides in part that:

> Should [Schnucks] and XPO fail to reach a mutually satisfactory resolution [regarding claims for damaged or lost inventory] during Alternative Dispute Resolution, then either party shall be entitled to institute judicial proceedings. ***The prevailing party in*** Alternative Dispute Resolution or ***litigation shall be entitled to recover (and the non-prevailing party shall be obligated to pay) all costs and expenses incurred by the prevailing party*** in connection therewith including ***reasonable attorney fees***, third party fees for Alternative Dispute Resolution, and ***court costs***. (Emphasis added.)

Neither XPO nor Schnucks asserted claims against the other pursuant to Section 6(h). XPO's claims for breach of contract and action on account alleged that Schnucks "failed to properly equip and furnish the new warehouse facility;" failed to "provide necessary information or otherwise cooperate;" and withheld "fees owed to XPO for its services." Schnucks' claims for breach of contract, breach of the duty of good faith and fair dealing, and conversion all sought

relief based on XPO's failure to comply with its contractual, statutory and/or common law obligations to provide warehouse management services consistent with prevailing industry standards. XPO characterizes Schnucks' claims as ones for inventory damage or loss; however, the fact that Schnucks' primary category of damages remaining following the Court's pre-trial rulings related to the replacement cost of inventory loss does not convert its claims into claims under Section 6(h).

Moreover, a plain reading of Section 6(h) makes clear that recovery of attorneys' fees and expenses is authorized only when the parties to the Agreement invoke and proceed under the Inventory Claim Procedure. First, XPO must perform cycle counts "in accordance with the schedule indicated in Schedule 1." If a cycle count indicates that Schnucks' inventory is damaged, spoiled, out-of-date, missing or unaccounted for, XPO must "immediately" report inventory deficiencies to Schnucks and cooperate with Schnucks to investigate the situation and the cause. Schnucks must then make a written claim for inventory damage within 30 days. XPO has 30 days to dispute Schnucks' claim in writing. If XPO and Schnucks are unable to resolve any dispute within 30 days, they must submit the dispute to a mutually agreed upon third-party for Alternative Dispute Resolution. If ADR is unsuccessful, then either party is entitled to institute judicial proceedings. Then, and only then, is the prevailing party under the judicial proceedings so commenced entitled to fee shifting. None of those actions were taken or pursued and neither XPO nor Schnucks purported to follow this required procedure. Thus, the Court finds no basis for concluding that Section 6(h) authorizes the recovery of attorneys' fees and expenses in this case.

XPO contends the indemnity clause in Section 5(b) provides a second contractual basis for an award of attorneys' fees because its damages were incurred "in connection with" a breach

of Schnucks' contractual obligations to pay XPO's invoices for services performed. (Section 4(a)). However, the jury found in favor of Schnucks on XPO's breach of contract claim. Thus, XPO's contention is unavailing.

To the extent XPO contends that Schnucks breached its indemnity obligation under Section 5(b), "[c]ourts generally do not interpret indemnity clauses as permitting the recovery of attorneys' fees in a suit between the contractual parties for breach of contract." <u>Monarch Fire Prot. Dist. of St. Louis Cty., Missouri v. Freedom Consulting & Auditing Servs., Inc.</u>, 678 F. Supp. 2d 927, 939 (E.D. Mo. 2009) (citing <u>Nusbaum v. City of Kansas City</u>, 100 S.W.3d 101, 109 (Mo. 2003)). Parties may contract around this general rule to permit the non-breaching party to recover attorneys' fees, but only if the indemnity clause "***expressly provide[s]*** for the recovery of expenses incurred in establishing the right to indemnity." <u>Id</u>. (citing <u>Nusbaum</u>, 100 S.W.3d at 109 (citing <u>RJF Int'l Corp. v. B.F. Goodrich Co.</u>, 880 S.W.2d 366, 368 (Mo. Ct. App. 1994)) (emphasis in the original).

Section 5(b) provides that:

> Subject to its applicable insurance limit(s), each party shall indemnify and hold the other and its representatives harmless from and against ***all claims***, liabilities, losses, ***damages and expenses (including reasonable attorneys' fees and expenses)*** incurred or suffered by any of them ***as a result of or in connection with*** (**i**) ***any breach of any of their respective obligations under this Agreement*** … (Emphasis added.)

Although this provision states that a "breach of any of [the parties'] respective obligations under this Agreement" will trigger the indemnity obligation, it does not include any language indicating that the clause applies to litigation between the parties or to actions to enforce the contract's terms. <u>Compare</u>, <u>RJF</u>, 880 S.W.2d at 369 (obligation to indemnify for, among other things, "each and every failure or breach of any representation, warranty, covenant and indemnification by [the breaching party]"); <u>Lee v. Investors Title Co.</u>, 241 S.W.3d 366, 368 (Mo.

Ct. App.2007) (provision to "indemnify and hold [Title Company] harmless of and from any and all loss, ... including attorneys' fees, which [Title Company] shall or may suffer or incur or become liable for under its said policy ... on a ... claim or in connection with its enforcement of its rights under this Agreement"). Unlike these provisions, Section 5(b) does not unequivocally confer an indemnity obligation on Schnucks in a suit between the parties.

For these reasons, the Court finds no basis for concluding that Section 5(b) authorizes the recovery of attorneys' fees and expenses in a breach of contract action between the contracting parties.

**Conclusion**

The Court acknowledges this case was fiercely litigated and that much of XPO's attorneys' fees were incurred defending against Schnucks' counterclaims and claims for consequential damages. Nevertheless, in the absence of a statute or contract providing for attorneys' fees, XPO is not entitled to recover its attorneys' fees and expenses from this litigation.

Accordingly,

**IT IS HEREBY ORDERED** that XPO's Motion for Bill of Costs [353] is **GRANTED**.

**IT IS FURTHER ORDERED** that costs shall be taxed against Defendant Schnuck Markets, Inc. and in favor of Plaintiff Jacobson Warehouse Company, Inc., d/b/a XPO Logistics Supply Chain, in the amount of **$99,942.94**.

**IT IS FURTHER ORDERED** that XPO's Motion for Award of Reasonable Attorneys' Fees and Expenses [354] and Supplemental Motion for Attorney Fees and Expenses [400] are **DENIED**.

Dated this 20th day of February, 2020.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE