UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACOBSON WAREHOUSE COMPANY, INC., d/b/a XPO LOGISTICS SUPPLY CHAIN, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:17-CV-00764 JAR ) |
| SCHNUCK MARKETS, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Jacobson Warehouse Company, Inc. d/b/a XPO Logistics Supply Chain ("XPO")'s Renewed Motion for Judgment as a Matter of Law (Doc. No. 366) and Motion to Alter or Amend Judgment (Doc. No 369). The motions are fully briefed and ready for disposition.

**Background**

This case was tried to a jury on July 8, 2019 through July 19, 2019. On XPO's claim for breach of contract against Schnuck Markets Inc. ("Schnucks"), the jury found in favor of Schnucks. On XPO's claim for action on account against Schnucks, the jury found in favor of XPO and awarded XPO damages of $3,166,837.01. On Schnucks' counterclaim for breach of contract against XPO, the jury found in favor of Schnucks and awarded Schnucks damages of $147,000. The Court entered judgment accordingly on August 1, 2019. XPO renews its motion for judgment as a matter of law setting aside Schnucks' $147,000 damages award on its counterclaim for breach of contract and moves to alter or amend the Court's judgment to include an award of prejudgment interest. XPO also seeks to amend the Court's judgment to include an award to XPO of

$490,154.20 in union avoidance fees under a theory of quantum meruit and to set aside the $160,000 offset awarded to Schnucks for union avoidance fees on summary judgment.

**I.     Renewed motion for judgment as a matter of law**

XPO renews its motion for judgment as a matter of law under Fed. R. Civ. P. 50(b). The Court denied XPO's motion for judgment as a matter of law at the close of all the evidence. XPO argues there was insufficient evidence to support Schnucks' award of contract damages because Schnucks failed to present any evidence that its inventory losses exceeded the 1% inventory loss allowance under Section 6(i) of the parties' Operating Agreement.[1] In response, Schnucks argues there is no basis in the record to assume that the amounts awarded by the jury were subject to the inventory allowance at all, or at least subject to the inventory allowance as XPO interprets it. In fact, Schnucks states that the jury's award of $147,000 is the precise amount XPO's counsel suggested Schnucks was entitled to in his closing argument if the jury found that XPO breached the Agreement.

Judgment as a matter of law is appropriate only when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Duban v. Waverly Sales Co., 760 F.3d 832, 835 (8th Cir. 2014). The court should review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party, without making credibility determinations or weighing the evidence. Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). Under these standards, XPO's motion must be denied.

---

[1] Section 6(i) of the Operating Agreement provides that "XPO shall be entitled to an allowance for loss of, or damage to inventory equivalent to one percent (1%) of the cases received and the cases shipped annually be each department at the Facility."

Schnucks presented the jury with exhibits and witness testimony from Jaime Ryberg, Alex Dye and Steve Carroll establishing lost/destroyed inventory. In addition, Alex Dye testified that XPO owed Schnucks additional moneys due to its failure to conduct true-ups as required by the Agreement. Either of these two categories of damages, and the evidence Schnucks offered to support them, were sufficient to support the jury's award.

The Court previously denied XPO's motion, finding clear evidence of inventory loss recoverable under the parties' Agreement. The Court further found the lack of backup documentation in support of Schnucks' damages calculations did not preclude the jury's consideration of that evidence and instead went to its weight, not admissibility. As for the inventory loss allowance, the Court found questions of fact regarding its applicability in the first instance. As Schnucks aptly points out, although it is possible the jury concluded that the inventory loss allowance applied to Schnucks' damages, nothing compels the conclusion that the jury applied the allowance to every dollar of inventory loss Schnucks was seeking, particularly since the jury was not asked to render specific conclusions or findings on the inventory loss allowance. After reviewing the evidence in its totality, and drawing all reasonable inferences in Schnucks' favor, XPO's renewed motion for judgment as a matter of law will be denied.

## II.     Motion to alter or amend judgment

XPO argues the Court's judgment is insufficient in three respects. First, XPO argues the judgment should be amended to award it prejudgment interest at the contractual rate of twelve percent per annum under the parties' Operating Agreement, or alternatively, at Missouri's statutory default rate of nine percent per annum. Second, XPO argues the judgment should be amended to award it $490,154.20 in union avoidance costs pursuant to a theory of quantum meruit and to set aside Schnucks' $160,000 offset for union avoidance costs awarded on summary judgment. Lastly,

XPO argues the judgment should be amended to dismiss as moot Schnucks' counterclaim for breach of the transition services agreement (Count VI).[2]

Motions to alter or amend a judgment under Fed. R. Civ. P. 59(e) serve the limited function of correcting "manifest errors of law or fact or to present newly discovered evidence." Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998); White v. United States, No. 4:15CV1252 SNLJ, 2019 WL 1518286, at *2 (E.D. Mo. Apr. 8, 2019). Motions brought pursuant to Rule 59(e) cannot be used to introduce new evidence or legal theories, or to raise arguments which could have been offered or raised prior to entry of judgment. Hagerman v. Yukon Energy Corp., 839 F.2d 407, 414 (8th Cir. 1988). A district court has "broad discretion" in determining whether to grant a Rule 59(e) motion. Id. at 413.

The Court has even greater discretion to grant a motion to reconsider an interlocutory order given its interest in judicial economy and ensuring respect for the finality of its decisions. Disc. Tobacco Warehouse, Inc. v. Briggs Tobacco and Specialty Co. Inc., No. 3:09CV05078 DGK, 2010 WL 3522476, at *2 (W.D. Mo. Sept. 2, 2010). Accordingly, the Court may reconsider an interlocutory order only if the moving party demonstrates "(1) that it did not have a fair opportunity to argue the matter previously, and (2) that granting the motion is necessary to correct a significant error." Id.; see also Trickey v. Kaman Indus. Techs. Corp., No. 1:09–CV–00026–SNLJ, 2011 WL 2118578, at *2 (E.D. Mo. May 26, 2011).

**Prejudgment interest**

A motion for prejudgment interest is subject to Rule 59(e) because it "is an element of plaintiff's complete compensation" and "does not raise issues wholly collateral to the judgment in

---

[2] The record reflects that on April 18, 2017, Schnucks dismissed Count VI with prejudice. (Doc. Nos. 34, 35).

- 4 -

the main cause of action." Reyher v. Champion Int'l Corp., 975 F.2d 483, 488 (8th Cir. 1992) (quoting Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989)).

In Missouri, "[p]rejudgment interest must be based upon either a statute or a contract, either express or implied." Barber & Sons Co. v. Nachtigal Farms, Inc., No. 16-0404-CV-W-BP, 2017 WL 7725247, at *4 (W.D. Mo. Nov. 8, 2017) (quoting McKinney v. State Farm Mut. Ins., 123 S.W.3d 242, 246 (Mo. Ct. App. 2003)). In addition, prejudgment interest can be awarded only for liquidated claims, that is, claims that are "fixed and determined or readily ascertainable by computation or a recognized standard." Travelers Prop. Cas. Co. of Am. v. Jet Midwest Technik, Inc., No. 16-06084-CV-SJ-ODS, 2019 WL 2411443, at *1 (W.D. Mo. June 7, 2019) (quoting Schnucks Carrollton Corp. v. Bridgeton Health & Fitness, Inc., 884 S.W.2d 733, 740 (Mo. Ct. App. 1994)). Merely denying liability does not render a claim unliquidated. Lucent Technologies, Inc. v. Mid–West Electronics, Inc., 49 S.W.3d 236, 246 (Mo. Ct. App. 2001).

XPO contends the parties' Operating Agreement governs the award of prejudgment interest, and specifically Section 4, which provides:

> A late payment charge of one percent (1%) per month will be assessed against the outstanding balance of any past due ***undisputed*** invoice. Schnucks shall make timely payment of the undisputed portion(s) of any disputed invoice.

(Doc. No. 8-1 at Section 4.a(i)[A]) (emphasis added). Schnucks contends the contractual rate of twelve percent does not apply because it "disputed" all of the invoices at issue based on XPO's failure to invoice on a budgeted weekly basis based on "cost-per-case" and to include adjustments for "true-ups," i.e., reconciliations of XPO's actual operating expenses at NorthPark with the parties' operating budget as per the Agreement. (Doc. No. 390 at 4). Schnucks also disputed the union avoidance costs included in XPO's invoices. (Id.). XPO replies that Schnucks did not "dispute" the invoiced amounts, as that term is used in the Agreement, but rather its obligation to

pay those amounts based on XPO's alleged breach of the Agreement, and notes that Schnucks failed to invoke its right to have XPO's invoices independently audited – the agreed upon mechanism for challenging an invoice. (Doc. No. 395 at 8-9).

This Court has previously found the Agreement to be an unambiguous contract between sophisticated parties and notes that the goal of contract interpretation is to give effect to the parties' intent as evidenced by the language of the agreement. Based on a plain reading of Section 4, the Court concludes that XPO and Schnucks negotiated and agreed upon a late payment penalty to be assessed on past due invoices that they agreed should be paid. This is clearly not the case where, as here, Schnucks contested the invoices at issue, i.e., disputed the charges, and the case proceeded to trial. Furthermore, nothing in the Agreement requires Schnucks to invoke the audit adjustment procedure set out in Section 4.a(i) to avoid the late payment charge of one percent per month in Section 4.a(i)[A]. "It is not within the province of the court to alter a contract by construction, or to make a new contract for the parties." Fleishman-Hillard, Inc. v. McCombs, No. 4:10-CV-676 CAS, 2011 WL 5039809, at *3 (E.D. Mo. Oct. 24, 2011) (internal quotation marks and citations omitted). For these reasons, the Court concludes that XPO is not entitled to contractual interest at the rate of twelve percent per annum.

Alternatively, XPO argues that Missouri's prejudgment interest rate of nine percent applies. Mo. Rev. Stat. § 408.020 (2000) provides that "[c]reditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made." As a general rule, "an award of prejudgment interest in a case where § 408.020 is applicable is not a matter of court discretion; it is compelled." Hess v. Citibank,

(S. Dakota), N.A., 459 F.3d 837, 845 (8th Cir. 2006) (quoting Springfield Land and Dev. Co. v. Bass, 48 S.W.3d 620, 633 (Mo. Ct. App. 2001)).

Missouri courts award prejudgment interest if three elements are satisfied: (1) the expenses must be due and payable; (2) the claim must be liquidated or the amount of the claim must be reasonably ascertainable; and (3) the obligee must make a demand on the obligor for the amount due. Travelers Prop., 2019 WL 2411443, at *1 (citing Barkley, Inc. v. Gabriel Bros., Inc., 829 F.3d 1030, 1039 (8th Cir. 2016) (quoting Jablonski v. Barton Mut. Ins. Co., 291 S.W.3d 345, 350 (Mo. Ct. App. 2010)).

XPO identifies three components of its damages: (i) amounts invoiced to Schnucks that were not paid ($1,088,238.93); (ii) amounts invoiced to Schnucks that were only partially paid ($358,820.08); and (iii) amounts that Schnucks improperly offset as "labor credits" against prior invoiced amounts ($1,719,778.00), totaling $3,166,837.01, the principal judgment amount. XPO argues that because these damages were amounts specified on its invoices, they were "ascertainable" on the dates invoiced, making the claims liquidated and subject to prejudgment interest. Schnucks acknowledges that XPO may be able to recover statutory prejudgment interest on $1,447,059.01 (from XPO's first two categories of damages) in fixed, invoiced claims from November 17, 2017 (the date of XPO's demand letter to Schnucks) until August 1, 2019 (the date of the Judgment). With respect to the third category, however, Schnucks contends that the amount of "labor credits" ($1,719,778.00) was not fixed or liquidated and thus not subject to prejudgment interest.

In reply, XPO argues that the labor credits are not relevant to whether its claims were liquidated, which is determined by examining the underlying invoices. XPO notes that Schnucks calculated the labor credits itself using its own records and then withheld those amounts from the

XPO invoices, making its argument that the credits could not be fixed and ascertainable disingenuous.

The fact that a party denies liability or defends a claim against it, or even disputes the actual amount owed, does not preclude an award of prejudgment interest. Macheca Transp. Co. v. Philadelphia Indem. Ins. Co., 737 F.3d 1188, 1196 (8th Cir. 2013) (citing Comens v. SSM St. Charles Clinic Med. Grp., Inc., 335 S.W.3d 76, 82 (Mo. Ct. App. 2011)); Barkley, 829 F.3d at 1040. See also Lincoln Benefit Life Co. v. Edwards, 243 F.3d 457, 463–64 (8th Cir. 2001) ("An asserted right to an offset does not render an amount unliquidated."). "To hold otherwise would allow the opposing party to accrue pecuniary benefit unfairly by the simple expedient of producing conflicting estimates of value." Comens, 335 S.W.3d at 82. The Court finds the amount of payment due under the XPO invoices was fixed and determined; therefore, XPO's claim is one for which prejudgment interest may be awarded.

Under § 408.020, prejudgment interest begins to accrue on the date that demand for payment is made. Graybar Elec. Co. v. Fed. Ins. Co., 567 F. Supp. 2d 1116, 1128 (E.D. Mo. 2008) (citations omitted). "The demand for payment need not be in any certain form, but it must be definite as to amount and time." Travelers Prop., 2019 WL 2411443, at *3 (quoting Ogg v. Mediacom, LLC, 382 S.W.3d 108, 119 (Mo. Ct. App. 2012)).

Under the Agreement, XPO's invoices were due seven days after they were submitted. See Section 4.a(i)[A] ("The invoice will be sent to Schnucks via email on Monday of each week and will be payable the following Monday via ACH payment."). XPO has thus revised its calculation of prejudgment interest with respect to its first two categories of damages to begin accruing eight days from the invoice issue date, when such invoices would have been past due, and continuing until the Court enters its "final judgment." (Doc. No. 395 at 6-7). With regard to its third category

of damages, i.e., labor credits, XPO calculates interest from the date Schnucks took each labor credit, as opposed to the earlier invoice issue dates, and likewise continuing through entry of "final judgment." (Doc. No. 370 at 9).

Schnucks argues that the beginning date for purposes of calculating prejudgment interest on XPO's first two categories of damages is November 17, 2017, the date of XPO's demand letter, as opposed to the date the invoices were issued, and that the end date is the date of the judgment, August 1, 2019. (Doc. No. 390 at 8-9). As for the third category, Schnucks argues XPO has failed to show it made a demand for the labor credits that was definite as to both time and amount, and that because the complaint does not mention labor credits, the filing of the lawsuit did not constitute a sufficient demand under § 408.020.

The Court finds that XPO made its demands by sending Schnucks invoices for payments. See Juan v. Grow, 547 S.W.3d 585, 598 (Mo. Ct. App. 2018) (finding counterclaimants made their demands by sending plaintiff invoices for payments); Doe Run Resources Corp. v. Certain Underwriters at Lloyd's London, 400 S.W.3d 463, 477 (Mo. Ct. App. 2013) (finding multiple demands made where plaintiff sent invoices and spreadsheets detailing the invoices and costs); Bledsoe Plumbing & Heating, Inc. v. Brown, 66 S.W.3d 169, 173 (Mo. Ct. App. 2002) (ordering prejudgment interest to be recalculated to the date that the bill was sent). Here, the unpaid and underpaid invoices submitted between May 16, 2017 and October 31, 2017 informed Schnucks of the amounts due and owing XPO. (Declaration of Shannon Christensen (Doc. No. 395-3) at ¶¶ 7, 8). In February 2017, Schnucks made two partial payments on prior invoices based on its asserted entitlement to "labor credits" on those invoices that Schnucks itself calculated. (Id. at ¶ 9). The Court finds demand was made by XPO on the due date of those invoices. Thus, Schnucks's reliance on either the date of a demand letter or the filing of the lawsuit is unavailing.

With regard to the end date for calculating prejudgment interest, it is well-settled in this circuit that prejudgment interest accrues until judgment is entered by the Court. Jo Ann Howard & Assocs., P.C. v. Cassity, No. 4:09-CV-01252 ERW, 2019 WL 6250827, at *2 (E.D. Mo. Nov. 22, 2019) (collecting cases). Federal Rule of Civil Procedure 54(a) states that the term "judgment" as used in the federal rules includes "any order from which an appeal lies." A judgment is rendered when entered, that is, when a writing signed by the judge and denominated 'judgment' or 'decree' is filed." Payne v. Markeson, 414 S.W.3d 530, 536 (Mo. Ct. App. 2013). Thus, the Judgment issued on August 1, 2019 was a final, appealable judgment pursuant to Rule 54(a).

XPO is entitled to prejudgment interest at the statutory rate of nine percent per annum, accruing immediately after the payment due date per XPO's invoices through the date of judgment, August 1, 2019. The Court has calculated prejudgment interest using XPO's revised dates of demand through August 1, 2019 in the amount of $643,301.37 and will amend its judgment accordingly.[3]

**Union avoidance costs**

Next, XPO asks this Court to amend its Judgment to award XPO $490,154.20 in union avoidance costs under a theory of quantum meruit. XPO acknowledges its claim for quantum meruit was dismissed (Doc. No. 64), but asserts this ruling was interlocutory and can be revisited in a Rule 59(e) motion.[4] XPO also asks this Court to set aside the $160,000 offset for union avoidance costs that XPO billed and Schnucks paid, even though the Court granted summary judgment to Schnucks

---

[3] The formula for calculating the amount of simple interest is Starting Amount × Annual Interest Rate × Time Period. Time is calculated yearly, using 365 days per year. For instance, the time between the due date of underpaid invoice # 278852 (5/24/2017) and the judgment date (August 1, 2019) is 799 days or 2.189 years. The principal amount of $9,837.50 × 9% × 2.189 = $1,938.12.

[4] The Court found XPO did not provide a basis for distinguishing its claims for unjust enrichment and quantum meruit from its contract claims, or explained how these claims are truly "alternative," given that there is no contention that the Agreement is somehow unenforceable. (Doc. No. 64 at 5).

on this affirmative defense shortly before trial. (Doc. No. 252). As discussed above, the Court may reconsider an interlocutory order only if the moving party demonstrates that it did not have a fair opportunity to argue the matter previously, and that granting the motion is necessary to correct a significant error." Disc. Tobacco, 2010 WL 3522476, at *2.

Regarding XPO's claim for union avoidance costs, the Court concluded, despite XPO's contention to the contrary, that such costs were not specifically identified – or fairly and reasonably encompassed – within the categories of costs for which Schnucks agreed to be liable under the parties' Agreement. Although it was undisputed that union avoidance was a goal for NorthPark and one of the reasons Schnucks hired XPO, the Court ruled that XPO could not pass off to Schnucks the cost of providing what it was offering, namely a non-union workforce. Accordingly, the Court granted Schnucks' motion for summary judgment on XPO's claim for union avoidance costs and Schnucks' affirmative defense of offset. (Doc. No. 252 at 9-10).

In its motion, XPO does not assert any error of law or mistake of fact, nor does it claim that any newly discovered evidence not considered by the Court would warrant reversal of the Court's prior rulings. Instead, XPO references the jury's verdict that it should be awarded the amounts it billed Schnucks and the evidence "in the record" and "at trial" that supports the elements for recovery in quantum meruit.[5] This does not constitute newly discovered evidence under Rule 59(e). A motion under Rule 59(e) is not a means to relitigate a matter previously decided by the Court. In re Jones, 112 B.R. 975, 976-77 (Bankr. W.D. Mo. 1989). Because XPO fails to satisfy its high burden of proof or provide the Court with any legitimate reason under Rule 59(e) to reconsider its prior rulings, XPO's motion related to union avoidance costs will be denied.

---

[5] The essential elements of quantum meruit are: "(1) a benefit conferred upon defendant by plaintiff; (2) appreciation by defendant of the fact of such benefit; and (3) acceptance and retention by defendant without payment." Leisman v. Archway Med., Inc., 53 F. Supp. 3d 1144, 1149 (E.D. Mo. 2014).

### Breach of the transition services agreement (Count VI)

Lastly, XPO asks that the Judgment be amended to dismiss as moot Schnucks' counterclaim for breach of the transition services agreement (Count VI of the Second Amended Counterclaim). As noted above, Schnucks dismissed Count VI with prejudice on April 18, 2017. (Doc. Nos. 34, 35). Thus, XPO's motion – as it relates to Count VI of Schnucks' amended counterclaim – will be denied as moot.

### Conclusion

For these reasons, XPO's renewed motion for judgment as a matter of law is denied. XPO's motion to alter or amend judgment is granted in part to award XPO prejudgment interest at the statutory rate of nine percent per annum, through August 1, 2019, in the total amount of **$643,301.37**. In all other respects, XPO's motion is denied.

Accordingly,

**IT IS HEREBY ORDERED** that XPO's Renewed Motion for Judgment as a Matter of Law [366] is **DENIED**.

**IT IS FURTHER ORDERED** that XPO's Motion to Alter or Amend Judgment [369] is **GRANTED in part** and **DENIED in part** in accordance with the rulings herein.

An Amended Judgment accompanies this Memorandum and Order.

Dated this 20th day of February, 2020.

_John A. Ross_
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**