UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACOBSON WAREHOUSE CO., INC., d/b/a XPO LOGISTICS SUPPLY CHAIN, | ) ) ) |
| Plaintiff/Counterclaim Defendant, | ) ) |
| v. | ) No. 4:17-CV-00764 JAR ) |
| SCHNUCK MARKETS, INC., | ) ) |
| Defendant/Counterclaim Plaintiff. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Schnuck Markets, Inc. ("Schnucks")'s Motion for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(a) (Doc. No. 362); Renewed Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b) (Doc. No. 364); and Motion for New Trial Pursuant to Fed. R. Civ. P. 59(a) (Doc. No. 367). The motions are fully briefed and ready for disposition.

**I.   Motion for relief from judgment**

On June 21, 2019, the Court granted partial summary judgment in favor of Schnucks on XPO's claim for $490,154.20 in union avoidance costs and Schnucks' affirmative defense of offset of $159,612.00 in union avoidance costs Schnucks paid to XPO under protest. (Doc. No. 252). The case proceeded to trial on July 8, 2019 and concluded on July 19, 2019. On XPO's claim for breach of contract against Schnucks, the jury found in favor of Schnucks. On XPO's claim for action on account against Schnucks, the jury found in favor of XPO and awarded XPO damages of $3,166,837.01. On Schnucks' counterclaim for breach of contract against XPO, the jury found in favor of Schnucks and awarded Schnucks damages of $147,000. The Court entered judgment

accordingly on August 1, 2019. The judgment did not, however, reference the Court's previous ruling awarding Schnucks' partial summary judgment on its affirmative defense of offset, and did not otherwise offset the amounts it paid under protest against the damages awarded XPO. Schnucks requests the Court alter the judgment to include the $159,612.00 offset.

XPO opposes the motion, arguing that it is entitled to the union avoidance fees under its quantum meruit claim, which XPO contends was prematurely dismissed by this Court. In further opposition, XPO argues that Schnucks is not entitled to the damages award of $147,000 for XPO's breach of contract given the lack of evidence of its damages. The Court has considered these arguments as previously set forth in XPO's motion to alter or amend judgment and renewed motion for judgment as a matter of law and rejected them.

Pursuant to Rule 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). The Eighth Circuit explains that "[u]nder Rule 60(a) a court may correct a judgment so as to reflect what was understood, intended and agreed upon by the parties and the court." Kocher v. Dow Chem. Co., 132 F.3d 1225, 1229 (8th Cir. 1997) (internal quotation omitted). "Rule 60(a) permits only a correction for the purpose of reflecting accurately a decision that the court actually made." Id. (quotation omitted).

The Court's memorandum and order of June 21, 2019 indicated the Court's intention to award an offset to Schnucks for the union avoidance costs it paid to XPO under protest. The Court finds it made "a mistake arising from oversight or omission" in failing to reference its previous ruling and to offset the damages awarded to XPO. Therefore, Schnucks' motion for relief from judgment will be granted and the final judgment amended to reflect an offset in favor of Schnucks in the amount of $159,612.00.

## II. Renewed motion for judgment as a matter of law

Schnucks renews its motion for judgment as a matter of law under Fed. R. Civ. P. 50(b). The Court denied Schnucks' motion at the close of XPO's case and again at the close of all the evidence. Schnucks argues that XPO failed to establish its damages on its action on account claim with reasonable certainty, as demonstrated by the fact that the jury awarded XPO $3,166,837.01 - $42,546.13 less than the $3,209,383.14 it was seeking. XPO responds that the testimony and documentary evidence it presented at trial were sufficient to enable the jury to calculate damages with reasonable certainty and that Schnucks' objections to specific XPO invoices did not render the jury award against the weight of the evidence.

Judgment as a matter of law is appropriate only when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Duban v. Waverly Sales Co., 760 F.3d 832, 835 (8th Cir. 2014). The court should review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party, without making credibility determinations or weighing the evidence. Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). Under these standards, Schnucks' motion must be denied.

To recover on an action on account, the plaintiff must show an offer, acceptance, consideration, correctness of the account, and the reasonableness of the charges. KDW Staffing, LLC v. Grove Construction, LLC, 584 S.W.3d 833, 838 (Mo. Ct. App. 2019) (citation omitted). XPO presented the jury with testimony from Shannon Christensen regarding XPO's billing process and the outstanding amounts owed by Schnucks, as well as documentary evidence of these charges in the form of invoices and supporting materials.

The Court previously denied Schnucks' motion, finding XPO had presented sufficient evidence from which a reasonable jury could find that there was a contract; that the account was correct – either in full or in part; and that the charges were reasonable – either in full or in part. It was for the jury to decide what weight to give the evidence and which charges were recoverable by XPO. After reviewing the evidence in its totality, and drawing all reasonable inferences in XPO's favor, Schnucks' renewed motion for judgment as a matter of law will be denied.

### III. Motion for new trial

Schnucks argues it is entitled to a new trial for four reasons: (1) the Court erred in directing a verdict against it on its negligence counterclaim; (2) the Court erred in directing a verdict against it on its fraud counterclaim; (3) the Court erred in allowing XPO's damages rebuttal expert, Angela Morelock, to offer previously undisclosed opinions at trial and to opine on the meaning of the inventory loss allowance provision; and (4) the Court erred in admitting into evidence privileged attorney-client communications from Jaime Ryberg to Schnucks' in-house counsel regarding the meaning and application of the inventory loss allowance provision.

The district court may order a new trial where it is convinced that the verdict was unsupported by the evidence or that prejudicial error was committed during the trial. White v. United States, No. 4:15CV1252 SNLJ, 2019 WL 1518286, at *1 (E.D. Mo. Apr. 8, 2019) (citing Hannah v. Haskins, 612 F.2d 373, 376 (8th Cir. 1980)). A new trial should only be granted to "avoid a miscarriage of justice." Id. (quoting McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1400 (8th Cir. 1994)). "The authority to grant a new trial ... is confided almost entirely to the exercise of discretion on the part of the trial court." Sanford v. Crittenden Memorial Hospital, 141 F.3d 882, 884 (8th Cir. 1998).

First, with respect to Schnucks' negligence counterclaim, the Court found there was insufficient evidence to establish that XPO owed Schnucks a duty separate and apart from its contractual duty under the Agreement. Schnucks contends this finding conflicts with the Court's previous rulings and is inconsistent with the evidence. Schnucks references the Court's November 29, 2017 order denying XPO's motion to dismiss Schnucks' negligence counterclaim. But of course, at that stage of the proceedings, the Court found it premature to conclude that Schnucks' claim arose solely in contract given its allegations of a special relationship between the parties that could give rise to a legal duty beyond that imposed by their Agreement. (Doc. No. 64 at 7). Having now heard all of the evidence and testimony, the Court finds no independent basis for negligence liability. As indicated on the record, both the contract claim and the negligence claim reference the same standard of care, i.e., "prevailing warehouse industry standard[s]," which XPO agreed to. Likewise, the measure of damages for both claims, i.e., inventory losses, was identical. For the same reasons stated on the record, the Court will deny the motion for new trial on this ground.

Second, the Court found there was insufficient evidence to support a jury verdict against XPO on Schnucks' counterclaim for fraud based on representations XPO made in 2014 in response to Schnucks' request for proposal when the evidence presented related to XPO's inability to perform in 2016 and 2017. Schnucks presented no evidence from which a jury could find that XPO knew these representations were false when made. Moreover, the Agreement specifically provided that the parties agreed, and Schnuck in particular affirmed, that they had not relied on any representation not contained in the Agreement. Under these circumstances, the Court continues to believe there was insufficient evidence to submit the fraud claim. The Court must "rely on its own reading of the evidence in determining whether the verdict goes against the clear weight of the

evidence." Mears v. Nationwide Mut. Ins. Co., 91 F.3d 1118, 1123 (8th Cir. 1996) (citation omitted). Thus, Schnucks' motion for new trial on this ground will be denied.

Next, Schnucks contends that the Court erred in allowing the admission of certain trial testimony of XPO's damages expert, Angela Morelock, and specifically her criticism of Jaime Ryberg's inventory loss calculations. Morelock did not offer any opinions directed at Ryberg's calculations in her expert report, focusing instead on the calculations of product loss performed by Alex Dye, Schnucks' designated Rule 30(b)(6) witness on damages. Schnucks argues that Morelock "sprung" these opinions on Schnucks for the first time at trial in violation of Rule 26(a)(2), thereby preventing it from subjecting her testimony to vigorous cross-examination and presenting contrary evidence at trial. Schnucks also contends that Morelock's opinions on proof of damages and the meaning and application of the inventory loss allowance provision were inadmissible legal conclusions.

XPO responds that because Dye's opinion relied upon Ryberg's inventory loss calculations, Morelock's rebuttal of Ryberg's testimony at trial was the same critique she raised in her pretrial report and directed at Dye's opinion. In other words, Morelock expressed the same opinions at trial that she expressed in her report, i.e., Schnucks' inventory loss calculations were flawed. Schnucks was fully aware of Morelock's opinions and what she would say, and thus was not subjected to any surprise or prejudice warranting a new trial.

As indicated on the record, the Court overruled Schnucks' objections to Morelock's testimony and allowed her to testify in rebuttal to Ryberg's testimony at trial. The Court determined that Morelock's opinions on this testimony were not required to be included in an expert report. The Court also permitted Morelock to testify that the inventory loss allowance could be calculated as a numerical matter and that it was not included in Schnucks' damages calculations,

finding this would not constitute an interpretation of the parties' Agreement. For these reasons, allowing Morelock's testimony was not prejudicial to Schnucks and the Court will deny the motion for new trial on this ground.

Last, Schnucks argues the Court erred in admitting XPO's trial exhibits 253 and 254[1] into evidence because they are attorney-client privileged communications. The Court previously rejected this argument (see Doc. Nos. 220, 322), finding that Schnuck failed to make a clear showing that Ryberg's communications were primarily for legal advice, rather than primarily relating to "extraneous matters" (to an attorney-client privilege claim) such as business, financial, or accounting issues. (Doc. No. 220 at 3-4). The Court concluded that Ryberg's emails did not seek legal advice – either explicitly or implicitly – and did not reflect legal advice. Instead, the emails simply addressed the calculation and application of the Agreement's inventory loss allowance. Because Schnucks presents no new arguments on this issue, its motion for new trial on this ground will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Schnuck's Motion for Relief from Judgment Pursuant to Fed. R. Civ. P. 60(a) [362] is **GRANTED**.

---

[1] The first email was from Ryberg to Mark Doiron, Schnuck's Chief Merchant and Supply Chain Officer, and Rachel Steele, Schnuck's Assistant General Counsel. In the email, Ryberg informs Doiron that XPO is entitled to an inventory loss allowance calculated as 1% of the forecasted case volumes "mov[ing] through the warehouse." She calculates the total number of cases that would have to be lost or damaged before Schnuck could claim damages, stating XPO "can adjust the following # of cases per area before we would be able to recoup damages…"

The second email was from Ryberg to Doiron and Steele as well as to Brian Brink, in-house counsel for Schnuck, titled, "SLNP Inventory Adjustments – Claim versus Contract." In the email, Ryberg details the inventory activity for the past few reporting periods and assesses that activity in light of the loss allowance. She notes that "while [XPO] added inventory units they actually decreased the inventory dollarvalue. This is because they added lower average cost items and pitched higher average cost items. If we went strictly by the contract we would not be able to recover any funds for that area."

**IT IS FURTHER ORDERED** that Schnuck's Renewed Motion for Judgment as a Matter of Law [364] is **DENIED**.

**IT IS FINALLY ORDERED** that Schnuck's Motion for New Trial [367] is **DENIED**.

An Amended Judgment accompanies this Memorandum and Order.

Dated this 20th day of February, 2020.

*John A. Ross*
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**